# In the United States Court of Federal Claims

### No. 18-1699T
### Filed: May 31, 2020

```
* * * * * * * * * * * * * * * * *    *
                                     *
MEIR PERETZ,                         *
                                     *
                   Plaintiff,        *      Tax Refund; 26 U.S.C. § 6532
                                     *      Statute of Limitations; 26 U.S.C.
v.                                   *      § 7433; Motion to Dismiss;
                                     *      Subject-Matter Jurisdiction;
UNITED STATES,                       *      Failure to State a Claim.
                                     *
                   Defendant.        *
                                     *
* * * * * * * * * * * * * * * * *    *
```

**Lawrence R. Kulak**, Law Office of Lawrence R. Kulak, New York, NY, for plaintiff.

**Karen E. Servidea**, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her was **Mary M. Abate**, Assistant Chief, Court of Federal Claims Section, **David I. Pincus**, Chief, Court of Federal Claims Section, and **Richard E. Zuckerman**, Principal Deputy Assistant Attorney General, Tax Division, Department of Justice.

### O P I N I O N

### HORN, J.

On October 26, 2018, plaintiff, Meir Peretz, filed a complaint in the United States Court of Federal Claims against the United States.[1] Plaintiff's complaint alleged entitlement to a tax refund of $121,288.00 from the Internal Revenue Service (IRS), the majority of which was withheld from the proceeds of two stock sales in 2005 as backup withholding tax, due to the fact that plaintiff is a nonresident alien. The balance of the monies were withheld due to stock dividends paid on plaintiff's stocks. Plaintiff alleges that such funds were wrongfully withheld because the stock transactions resulted in a net loss, and that, in any event, he is not subject to backup withholding, because he is a nonresident alien, who is "not required to file any income tax return." According to plaintiff, in order to recover the amount withheld, the IRS "demanded" that plaintiff file a tax return and Form W-7, titled: "Application for IRS Individual Taxpayer Identification Number."

---

[1] Initially, plaintiff filed his complaint pro se. Subsequent filings for plaintiff were submitted by plaintiff's counsel of record, identified above.

Plaintiff ultimately submitted multiple versions of his 2005 Form 1040 tax return on separate dates, all of which stated that the withholdings resulted in an alleged $121,288.00 overpayment of his tax liability, which liability plaintiff stated was zero. Plaintiff states that he first submitted a 2005 Form 1040 in 2009 and that it was "timely filed on April 14, 2009." Plaintiff also refers to his tax return as a claim for refund. Plaintiff further argues that the IRS wrongfully remains in possession of the funds because the "IRS did not process the 2005 1040 return timely filed on April 14, 2009," and that, instead, the IRS considered "only the untimely" returns that plaintiff had sent to the IRS in later correspondences with the IRS. Plaintiff requests that the court "should direct Defendant to return the $121,288 deposited with the IRS and misappropriated by the Defendant as of December 27, 2005, plus 9% pre and post judgment interest compounded annually as is applicable in New York State on a judgment for conversion, plus costs and attorney fees." Finally, plaintiff asserts in his complaint in this court that he "should also be awarded damages pursuant to IRC 7433 [26 U.S.C. § 7433 (2018)] for the reckless and intentional misconduct of the IRS in confiscating and retaining monies it illegally converted."

In response to the complaint, defendant filed a motion to dismiss plaintiff's complaint in its entirety for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) (2018) of the Rules of the United States Court of Federal Claims (RCFC). Defendant asserts (1) that plaintiff did not file this suit for refund within the time allowed in 26 U.S.C. § 6532(a) (2018); and (2) this court is barred from hearing plaintiff's damages claim under 26 U.S.C. § 7433 for "reckless and intentional misconduct" by the IRS.

## FINDINGS OF FACT

Plaintiff is a nonresident alien without a valid United States social security number. Defendant's motion to dismiss indicates, and the parties do not dispute, that "during the time relevant to this suit, plaintiff Meir Peretz was a citizen of Israel and was not a United States resident." Along with his complaint, plaintiff included some documents related to plaintiff's Citicorp, Inc. (Citicorp) brokerage account. The Citicorp documents indicate that on April 27, 2000, plaintiff purchased, using his Citicorp account, 10,000 shares of Intel Corporation (Intel) at $115.50 per share and 10,000 shares of Microsoft Corporation (Microsoft) at $66.125 per share for a total of $1,816,314.00.[2]

---

[2] During the course of proceedings before this court, the parties produced multiple documents pertaining to plaintiff's account and dealings with Citicorp, although it is unclear when any of the Citicorp documents were first sent by plaintiff to the IRS, as none of the Citicorp documents produced by the parties are date-stamped as received by the IRS. The Citicorp documents in the record include: (1) plaintiff's trading activity as of April 30, 2000, showing that, on April 27, 2000, plaintiff purchased 10,000 shares of both Microsoft and Intel for a total cost of $1,816,314.00; (2) plaintiff's Client Statement for the month of December 2005, showing that, on December 21, 2005, plaintiff sold 3,658 shares of Microsoft and 12,735 shares of Intel for a total of $427,912.18, and that $119,815.40 was withheld from the sales as "Back-up tax;" (3) plaintiff's 2005 Form 1099-B, showing that the $119,815.40 withheld from the above two stock sales was the total federal income tax withheld from stock sales in 2005; (4) plaintiff's Form 1099-DIV,

Based on the record before the court, it appears that on December 21, 2005, plaintiff sold 12,735 shares of Intel at a price of $25.92 per share, and 3,658 shares of Microsoft at a price of $26.76 per share, for a total credit to plaintiff's account of $427,912.18. On December 27, 2005, Citicorp withheld, as backup withholding tax, a total of $119,815.40 from the proceeds of the sales. Plaintiff's 2005 Year End Summary from Citicorp indicates that a total of $121,287.57 was withheld as backup withholding tax for the year of 2005. As noted above, the additional withholding of $1,472.17 occurred as a result of plaintiff's receipt of dividends.

Plaintiff seeks to receive a refund of $121,288.00 with the IRS for the 2005 tax year. Attached to plaintiff's complaint in this court is a 2005 Form 1040 tax return, signed by plaintiff, and which, in Line 73a, requests a refund of $121,288.00. Plaintiff does not state a date on which he first sent a 2005 Form 1040 to the IRS, but alleges that it was sent along with his Form W-7, "Application for Individual Taxpayer Identification Number." Plaintiff's Form W-7, also attached to plaintiff's complaint, is date-stamped received by the IRS on April 14, 2009, but the 2005 Form 1040 attached to plaintiff's complaint in this court does not contain an IRS date-stamp. As will be discussed below, when plaintiff appealed the July 29, 2015 Notice of Disallowance for plaintiff's 2005 refund, the IRS Appeals Office took the position in a July 13, 2016 correspondence with plaintiff leading up to the denial of plaintiff's appeal on October 27, 2016, that the IRS did not first receive plaintiff's 2005 Form 1040 until August 30, 2010. Furthermore, although it appears that a number of versions of plaintiff's 2005 Form 1040 were submitted to the IRS by plaintiff on separate occasions,[3] none of the 2005 Form 1040s which have been produced by the

---

showing that an additional $1,472.17 was withheld from dividend distributions in 2005; and (5) plaintiff's 2005 Year End Summary, showing that the total federal tax withholdings from plaintiff's Citicorp account in 2005 was $121,287.57, the sum of the above withholdings from stock ($119,815.40) and dividend ($1,472.17) transactions. Additionally, in one of the versions of plaintiff's 2005 Form 1040 submitted to the IRS by plaintiff, the Schedule D portion of the 2005 Form 1040 indicates that plaintiff subsequently purchased additional shares of both stocks on July 1, 2003.

Plaintiff's complaint in this court states that his "Citicorp account statements listed an obviously fictitious social security number, to wit: [Redacted]-4444 for the account of Plaintiff, despite Plaintiff, as a foreigner not having or needing a social security number." Plaintiff attaches to his complaint a set of Citicorp documents titled: "Client Statement Forms 1099 and 2001 Year End Summary," which states: "SS # [Redacted]-4444." (capitalization in original). The remainder of the Citicorp documents do not list any social security number, for plaintiff, "fictitious" or otherwise.

[3] Among other documents, the IRS produced multiple versions of plaintiff's 2005 Form 1040, each which appear to have been submitted to the IRS by plaintiff at different times throughout plaintiff's correspondence with the IRS, as indicated by the date-stamp of receipt by the IRS on August 30, 2010, March 9, 2015, and September 24, 2015, and September 30, 2019, respectively. In addition to the date-stamps, the versions of plaintiff's 2005 Form 1040 produced by the IRS are distinguishable from one another by

defendant in connection with the above-captioned case are date-stamped as received by the IRS on April 14, 2009. The 2005 Form 1040 with the earliest date-stamp in the record before the court indicates receipt by the IRS on August 30, 2010. There is, however, one version of plaintiff's 2005 Form 1040, produced by the defendant, that contains no date-stamp, and is identical to the 2005 Form 1040 attached to plaintiff's complaint, except that it is unsigned by the plaintiff. Nevertheless, all versions of plaintiff's 2005 Form 1040 in the record before the court, as well as the one attached to plaintiff's complaint, show the input of "[$]0" for taxable income (Line 43) and for total tax liability (Line 63) as well as show "[$]121,288" for "Federal Income tax withheld from Forms W-2 and 1099" (Line 64), for total payments (Line 71), for the amount of overpayment (Line 72), and for the refund requested (Line 73a).

On October 1, 2009, the IRS sent plaintiff Letter 685C, rejecting his Form W-7. The October 1, 2009 Letter 685C states:

> Because your Form W-7/W-7SP, Application for IRS Individual Taxpayer Identification Number [ITIN], was rejected, we have assigned you [Redacted]6665* as your Internal Revenue Service Number (IRSN) to expedite the processing of the 1040 tax return you submitted with your ITIN application.
>
> - The IRSN we assigned is neither a social security number nor an IRS Individual Taxpayer Number (ITIN).
>
> - Therefore, no refund will be issued until you are assigned a valid ITIN or a social security number.

(capitalization and redaction in original). The October 1, 2009 Letter 685C does not specifically indicate why plaintiff's Form W-7 was rejected. Additionally, plaintiff uses this October 1, 2009 Letter 685C to support that a 2005 Form 1040 was submitted to the IRS on April 14, 2009, because the October 1, 2009 Letter 685C references "the 1040 tax return you submitted with your ITIN application." As discussed above, plaintiff alleges that he submitted his 2005 Form 1040 with his Form W-7 to the IRS, and the Form W-7 in the record before the court is date-stamped received by the IRS on April 14, 2009.[4] Defendant has agreed that, "for purposes of defendant's motion to dismiss, defendant has assumed

---

inputs or omissions in the preparer's date and time headers, the preparer's signature dates, taxpayer signature boxes and social security number boxes, and inputs in the Schedule D portion of the Form 1040 for stock bases, dates of acquired stock, and gain/loss dispositions of stock.

[4] In further support that a 2005 Form 1040 was received on the IRS by April 14, 2009, plaintiff has produced a letter from the IRS, dated December 23, 2009, in which the IRS contemplated assessing a $5,000.00 penalty because the IRS had "determined that the information you filed as a return of tax, or purported return of tax, on Apr. 14, 2009, is frivolous and there is no basis in the law for your position."

to be true that, on April 14, 2009, plaintiff filed with the IRS a Form 1040 for 2005, requesting a refund of $121,288."

The record before the court also contains a letter dated August 25, 2010, from plaintiff's now-deceased accountant, Menachem David, to the IRS. Mr. David's August 25, 2010 letter states:

> Your enclosed letter indicates that Mr. Peretz's W7 was rejected because it was incomplete. I contacted the IRS, which indicated that the item missing was 6d.
>
> We are now enclosing a corrected Form W7, with Item 6d completed.
>
> Form W7 accompanied a timely filed tax return, requesting a tax refund. Please process Form W7, issue an ITIN, and expedite the refund.

Along with Mr. David's August 25, 2010 letter and the resubmitted Form W-7 with Item 6d completed, Mr. David also submitted a version of plaintiff's 2005 Form 1040, also requesting a refund of $121,288.00, and which is date-stamped received by the IRS on August 30, 2010. As noted above, it is this 2005 Form 1040, date-stamped on August 30, 2010 by the IRS, that, on July 13, 2016, the IRS Appeals Office assumed was plaintiff's first filing of his 2005 Form 1040.

On November 22, 2010, the IRS sent plaintiff Notice No. CP567, informing him that the IRS was again rejecting his Form W-7 because he "did not respond within 45 days to Notice CP-566, *We Received Your Application for an IRS Individual Taxpayer Identification Number (ITIN)*, requesting additional information or supporting identification or exception documentation, to process your Form W-7." (emphasis in original). Although the record before the court contains the above-quoted Notice No. CP567 dated November 22, 2010, which referenced Notice CP-566, neither party has produced any document which is labeled Notice CP-566, and the date on which Notice CP-566 was issued is not evident from the record before the court.[5] The November 22, 2010 Notice No. CP567 further states:

> If you still require an ITIN, you will need to complete a new Form W-7 and submit it with **valid and unexpired** supporting identification or exception documentation, if applicable. Please attach it to a copy of your original tax return. Clearly indicate that the tax return is a copy, and submit it to the address shown at the top of this notice. Please refer to the Form W-7 instructions for assistance. You may also visit a local IRS Taxpayer

---

[5] The IRS' website explains that a CP566 Notice is sent to taxpayers when "[w]e need more information to process your application for an Individual Taxpayer Identification Number (ITIN). You may have sent us an incomplete form. You may have sent us the wrong documents." Understanding Your CP566 Notice, <u>available at</u> https://www.irs.gov/individuals/understanding-your-cp566-notice (last visited May 31, 2020).

> Assistance Center for help with completing the Form W-7 or reviewing your supporting identification or exception documentation for acceptability[.]

(capitalization and emphasis in original). It does not appear from the record before the court that plaintiff ever sent "a new Form W-7" in response to the November 22, 2010 Notice No. CP567. Moreover, based on the record before the court, it does not appear that the IRS ever assigned plaintiff an ITIN.

The IRS also sent a letter to plaintiff on January 18, 2011, which requested additional information from plaintiff relating to the withholding entries included in his tax return. The January 18, 2011 IRS letter states:

> Please provide a form with information that supports the wage or withholding entry of $121,288.00 on line 64, Form 1040. It could be Form W-2, Form W-2G (for gambling winnings), or Form 1099-R (for pension income). If you don't have the form you need, please contact the issuer of the income statement for a copy and send it with the copy of this letter. Otherwise, send us the information in some substitute form. For example, one substitute for Form W-2 could be an earnings statement from your employer which shows year-to-date totals. If you don't have an earnings statement, ask your employer for a copy.

As discussed above, the parties have produced documents sent from plaintiff to the IRS pertaining to plaintiff's Citicorp brokerage account, indicating that $121,287.57 was withheld by Citicorp for the 2005 tax year. The Citicorp documents, however, are not date-stamped received by the IRS, and the date on which the Citicorp documents were initially sent by plaintiff to the IRS is not evident from the record before the court. The January 18, 2011 IRS letter also states that plaintiff's "Form 1040 doesn't show your original signature(s). Please sign the declaration at the end of this letter."[6] The January 18, 2011 IRS letter further states: "Please send us this letter with your reply in the enclosed envelope within 20 days from the date of this letter." Finally, the January 18, 2011 IRS letter states:

> We will issue any refund due to you in about 6 to 8 weeks from the time we receive your response. We can give you credit for items only if you give us the information. Therefore, if we do not hear from you, we may have to increase the tax you owe or reduce your refund.

(capitalization in original).

---

[6] The declaration at the end of the January 18, 2011 letter states: "Under penalties of perjury, I declare that I have examined the return (including any accompanying schedules and statements) referred to in this letter and, to the best of my knowledge and belief, it is true, correct, and complete."

More than four years later, a representative for plaintiff, Mr. Abraham Dan, sent the IRS the following letter, dated March 4, 2015:

Dear IRS Official:

Enclosed is a letter sent to my client, Meir Peretz, stating that his $121,288 refund will be sent after proof of withholding is sent to the **IRS**. Enclosed is the Bank Statement from Citicorp **clearing** [sic] **showing the $121,288** withheld from his account. Enclosed also is a copy of his 2005 tax return showing the $121,288 refund, and the power of attorney. Please send him his refund plus interest.

(first three emphases in original, final emphasis added). The March 4, 2015 letter is date-stamped received by the IRS on March 9, 2015. Also date-stamped on March 9, 2015 is a copy of the January 18, 2011 letter from the IRS, discussed above; another version of plaintiff's 2005 Form 1040; and documents relating to a power of attorney for Mr. Dan.[7]

On July 29, 2015, the IRS sent plaintiff its first Notice of Disallowance of plaintiff's claim (the July 29, 2015 Notice of Disallowance), which is included in the record, and which stated:

CERTIFIED MAIL

Taxpayer identification number[8]:            [Redacted]-6665*

---

[7] Among the documents produced by the IRS are (1) a power of attorney affidavit for plaintiff with respect to Mr. Dan, dated February 19, 1987, and date-stamped received by the IRS on March 9, 2015; and (2) a Form 2848, "Power of Attorney and Declaration of Representative," also date-stamped received by the IRS on March 9, 2015. The Form 2848 appears to be signed by Mr. Dan, but is unsigned by plaintiff. The Form 2848 also indicates that Mr. Dan is a family member of plaintiff. Plaintiff states that "Abraham Dan is not an accountant or attorney." Furthermore, in plaintiff's briefings to the court, it appears that plaintiff now questions whether Mr. Dan had authority to act on behalf of plaintiff before the IRS. Plaintiff states in supplemental briefing to the court that "[t]he documents that Defendant received from the IRS in connection with the March 4, 2015 letter do not include any evidence of a valid power of attorney to Abraham Dan signed by Plaintiff, authorizing Mr. Dan to represent Plaintiff before the IRS, having been in effect at the time Abraham Dan wrote the March 4, 2015 letter."

[8] The court notes that although the above-quoted July 29, 2015 Notice of Disallowance references a "Taxpayer identification number," the record before the court indicates that the IRS never issued plaintiff an Individual Taxpayer Identification Number (ITIN) because he did not respond to the November 22, 2010 Notice No. CP-567, requiring plaintiff to submit a "new Form W-7." The "Taxpayer identification number" referenced above in the July 29, 2015 Notice of Disallowance instead matches the Internal Revenue Service Number (IRSN) which was issued to plaintiff in the IRS' October 1, 2009 letter, but which

Kind of tax:                               Income
Amount of claim:                   $121,288.00

Date of claim(s) received:       <u>Mar. 09, 2015</u>
Tax period:                       Dec. 31, 2005

Dear Taxpayer:

WE COULDN'T ALLOW YOUR CLAIM

WHY WE'RE SENDING YOU THIS LETTER

We disallowed your claim for credit for the period shown above.

WHY WE CAN'T ALLOW YOUR CLAIM

You filed your claim for credit or refund more than 3 years after the tax return due date. A claim must be filed within 3 years from the time the return was filed. In addition, the amount of the tax that can be credited or refunded is limited to the tax paid during the three years immediately preceding the filing of the claim (plus the period of any extension of time to file the tax return). Withheld tax and estimated tax payments are deemed to be paid on the last day prescribed (i.e., April 15) for filing your tax return. The excess of any amount allowable for the earned income credit over the actual income tax is treated in a similar manner to these prepaid credits.

(capitalization and redaction in original; emphasis added). The July 29, 2015 Notice of Disallowance also states:

IF YOU DISAGREE

You can appeal our decision with the Appeals Office (which is independent of our office) if we disallowed your claim because our records show that you filed your claim late. . . .

If you do not agree with our decision, you can file suit to recover tax, penalties, or other amounts, with the United States District Court having jurisdiction or with the United States Court of Federal Claims. These courts are part of the judiciary branch of the federal government and have no connection with the IRS.

---

letter stated that the IRSN was "neither a social security number nor an IRS Individual Taxpayer Number (ITIN)," and that "no refund will be issued until you are assigned a valid ITIN or a social security number."

The law permits you to do this within 2 years from the date of this letter. If you decide to appeal our decision first, the 2-year period still begins from the date of this letter. However, if you signed an agreement that waived your right to the notice of disallowance (Form 2297), the period for filing suit begins on the date you filed the waiver.[9]

(capitalization in original).

In a September 21, 2015 letter to the IRS from Raphael Grossman, Certified Public Accountant, plaintiff appealed the July 29, 2015 Notice of Disallowance. Mr. Grossman's September 21, 2015 letter to the IRS states:

<u>FACTS OF CASE SUPPORTING APPEAL:</u>

1. The 2005 return for Meir Peretz was timely filed. Please see Exhibit 1 which shows a copy of the return and a letter from the CPA to the IRS requesting that the refund be processed.

2. Please see letter from the IRS dated January 18, 2011, requesting that Meir Peretz provide documentation supporting the $121.288 [sic] amount withheld and shown on line 64 of his tax return.

3. Please see Exhibit 3 showing the $1372 withheld by Citibank on dividend income and the $119,815 withheld on stock sales.

4. Please send my client his refund due plus interest.

(capitalization and emphasis in original). The September 21, 2015 letter from Mr. Grossman is date-stamped received by the IRS on September 24, 2015. The record before the court does not contain any documents labeled as exhibits to Mr. Grossman's September 21, 2015 letter, although the letter appears to refer to some of the documents which were discussed above, namely: (1) the August 25, 2010 letter from Menachem David, plaintiff's now-deceased accountant; (2) the January 18, 2011 letter from the IRS; and (3) certain of plaintiff's Citicorp documents.

On July 13, 2016, during the course of plaintiff's appeal of the July 29, 2015 Notice of Disallowance to the IRS Appeals Office, Tina Tew, an IRS Appeals Officer, wrote the following letter to plaintiff:

---

[9] The parties do not dispute, and there is no indication in the record before the court, that plaintiff ever signed an agreement waiving his right to a notice of disallowance.

Dear Taxpayer:

As you know, I have been assigned the case involving your claim for abatement and/or refund of taxes assessed against you. The function of the Appeals Office is to resolve tax disputes within the framework of the facts and law, including court decisions.

My preliminary review of the information previously submitted by you indicates your claim should be denied as it was filed more than 3 years after the return due date. Internal Revenue Code Section 6511(a) stipulates that a claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later. The 2005 tax return was due on April 17, 2006 and was received on August 30, 2010. Since the claim was received more than 3 years after the due date, it must be denied.

The documentation that you submitted fails to substantiate that the claim was filed timely. I am willing to consider any other documentation that you may have to support your position. Please contact me within 30 days from the date of this letter. If I do not hear from you within this period, I will make my determination based on the available information. All written statements submitted should be signed under the penalties of perjury.

As discussed above, although defendant now takes the position that "for purposes of defendant's motion to dismiss, defendant has assumed to be true that, on April 14, 2009, plaintiff filed with the IRS a Form 1040 for 2005, requesting a refund of $121,288," the letter from Ms. Tew indicates that the IRS Appeals Office did not acknowledge that plaintiff had submitted a 2005 tax return on April 14, 2009. Instead, Ms. Tew appears to have considered the 2005 Form 1040 which was enclosed with Mr. David's August 25, 2010 letter to the IRS, and date-stamped received by the IRS on August 30, 2010, as plaintiff's first filing of his 2005 Form 1040 claiming a refund of $121,288.00, and reasoned that such submission was filed untimely.

Subsequently, in a letter dated October 27, 2016, the IRS informed plaintiff that his appeal was denied. The October 27, 2016 letter from the IRS states:

Dear Taxpayer:

Our Office has completed its review of your claim for abatement and/or refund of taxes that we have charged you. Based on the information submitted, there is no basis to allow any part of your claim as it was filed more than 3 years after the tax return due date.

You may pursue this matter further by filing suit in either the United States District Court or the United States Court of Federal Claims. If you decide to do this, you must file the suit within two-years from the date on the letter denying your claim, which the Holtsville NY [office] mailed to you on July 29, 2015.

On October 26, 2018, plaintiff filed the above-captioned complaint with this court. Plaintiff's current counsel of record in the above-captioned case also continued to correspond with the IRS, inquiring about plaintiff's claimed refund and requesting documents relating to plaintiff's request for refund, while also enclosing additional copies of plaintiff's 2005 Form 1040. A letter dated September 25, 2019 from plaintiff's counsel of record to the IRS states:

Please be advised that Mr. Peretz is a non-resident who never had a Social Security number. In 2005, the non-resident had a brokerage account in Citibank. Following a loss in the brokerage account in excess of $1,000,000, Citibank incorrectly withheld $150,000[10] of net proceeds after loss and forwarded the $150,000 to the IRS. The Form 1040 request for refund of the $150,000 erroneous withholding was filed with the IRS under Social Security number: [Redacted]-4444. Please see attachment showing Citibank's assigned [Redacted]-4444. Please see attached Form 1040 for 2005. Subsequently, the IRS assigned a Temporary Taxpayer Identification Number [Redacted]-6665. Please see attached IRS letter dated October 1, 2009. The non-resident, Meir Peretz never requested a social security number from the Social Security Administration or an IRS Individual Taxpayer Identification Number.

We are seeking documents that were filed and accepted by the IRS under these identification numbers, [Redacted]-4444 or [Redacted]-6665.

(redactions in original).

Based on a review of the record, it appears that the 2005 Form 1040 which is date-stamped received by the IRS on September 30, 2019 is the 2005 Form 1040 that plaintiff's counsel of record enclosed with his letter dated September 25, 2019, quoted above. The 2005 Form 1040 date-stamped as received by the IRS on September 30, 2019 is identical to the 2005 Form 1040 attached to plaintiff's complaint. Indeed, it appears to have been taken directly from the court's Electronic Case File (ECF) in the above-captioned matter when it was sent to the IRS, as it contains the ECF docket information that is associated with the above-captioned matter, and the specific ECF docket number that is associated

---

[10] There is no evidence in the record before the court that substantiates plaintiff's counsel of record's assertion in the above-quoted letter dated September 25, 2019, that $150,000.00 was withheld from plaintiff for the 2005 tax year. All of the Citicorp brokerage documents, discussed above, substantiate only that $121,287.57 was withheld from plaintiff for the 2005 tax year.

with the 2005 Form 1040 exhibit to plaintiff's complaint in the above-captioned matter. The only difference is that, as stated by plaintiff in his supplemental briefing, "the IRS, on its own initiative, annotated the copy of the 2005 Form 1040 that it stamped as received on September 30, 2019 as an Exhibit from Plaintiff's attorney. The IRS called it a 1040X and wrote the word 'Amended' on it."

On December 2, 2019, the IRS issued a second Notice of Disallowance, this time referencing a claim received on September 30, 2019. The December 2, 2019 Notice of Disallowance states:

CERTIFIED MAIL

Taxpayer identification number:   [Redacted]-6665*
Kind of tax:                      Individual Tax
Amount of claim:                  $121,288.00

Date of claims received:          Sep. 30, 2019[11]
Tax period:                       Dec. 31, 2005

Dear Taxpayer:

WE CAN'T ALLOW YOUR CLAIM

We disallowed your claim for credit for the tax period listed at the top of this letter.

WHY WE CAN'T ALLOW YOUR CLAIM

The number listed above is a temporary number that was assigned to you to process your return. It is not an ITIN, the previous 685C letter dated Oct. 1, 2009 mentioned that you need a valid taxpayer identification number, if you are unable to get a Social Security Number (SSN) then an Individual Taxpayer Identification Number (ITIN) is required.

The withholding credit of $121,288.00 was removed in 2011 even though the refund expiration date expired Apr. 15, 2009. The account was not adjusted, [sic] until then to allow you time to apply for an ITIN. Our records show there were two attempts with both ending in rejection in April 2009 and August 2010.

---

[11] As discussed above, the first Notice of Disallowance of plaintiff's claim for refund of $121,288.00 for the 2005 tax period was issued on July 29, 2015, responding to a "claim(s) received" on March 9, 2015.

(capitalization and redaction in original; emphasis added). The December 2, 2019 Notice of Disallowance further informs plaintiff, as did the first one, of plaintiff's opportunity to appeal the decision with the IRS Appeals Office, but the December 2, 2019 Notice of Disallowance did not state that plaintiff could file suit and did not provide a time limitation for plaintiff to file suit.[12]

The final correspondence between the IRS and plaintiff included in the record is a letter from an accountant for plaintiff, dated December 24, 2019, appealing the December 2, 2019 Notice of Disallowance. The December 24, 2019 letter includes plaintiff's version of the relevant chronology of events, and states:

1. Please be advised that Meir Peretz seeks to appeal to the Office of Appeals the December 2, 2019 disallowance of a claim for refund filed on April 14, 2009. (**Exhibit A**)

2. The tax periods and disallowed items Meir Peretz disagrees with are as follows: The IRS improperly $121,288.00 withheld [sic] from the remaining proceeds of stock sales at a loss in 2005.

3. Meir Peretz
   245 East 54th Street, Apt. 5M
   New York, NY 10022-4717

4. Meir Peretz sold shares of Microsoft and Intel suffering a loss of over $1million [sic]. A timely claim for refund was filed and submitted at the IRS office located in Garden City, New York 11530 on April 14, 2009. The claim for refund timely filed with a Request for taxpayer identification number ID # [sic] was date stamped April 14, 2009 (**Exhibit B**)

The request for a taxpayer identification number was rejected by IRS letter dated October 1, 2009 for an insignificant item the IRS asked to be completed; specifically, the entry date into the United State [sic] listed on Mr. Peretz's passport. (**Exhibit C**) The request for identification number was resubmitted by Mr. Peretz's accountant and received by the IRS on August 25, 2010 with this insignificant item, entry date listed on passport was added to the form and an unsigned copy of the initial Form 1040 was enclosed.

---

[12] The court notes that included in the unusual collection of entries and documents in the IRS record are several IRS transcripts with entries related to plaintiff's attempt to secure a refund with the IRS. The IRS transcripts indicate that plaintiff's claim for refund was apparently internally disallowed on a number of additional occasions to those described above, namely, the July 29, 2015 and the December 2, 2019 Notices of Disallowance, for which there are copies in the record before the court. The most recent IRS transcript, dated December 23, 2019, also contains "CLAIM DISALLOWED" entries on May 2, 2011, August 10, 2015 and December 30, 2019, for which there are no copies in the court record. (capitalization in original).

The IRS in subsequent communications was apparently erroneously processing the unsigned copy of the 1040 as a new untimely claim for refund. (**Exhibit D**)

The claim itself that was filed on April 14, 2009 was acknowledged to have been received by the IRS on April 14, 2005. However, the IRS egregiously concluded that the claim for refund was a frivolous tax protest and the IRS went so far as to impose a $5,000 penalty for tiling what the IRS mischaracterized as a frivolous claim and refused to process the claim. See IRS letter dated December 23, 2009 (**Exhibit E**). The letter dated December 20, 2009 does not state any disallowance of the claim filed on April 14, 2009. The first disallowance received from the IRS is the disallowance dated December 2, 2019.[13] This disallowance shockingly states that the April 14, 2009 claim for refund was first received by the IRS on September 30, 2019. There was no separate claim for refund, that would have been untimely, made on or about September 30, 2019.

5. There is no constitutional basis to misappropriate monies, in the form of withholding from a foreign individual who suffered losses and not income on the sale of publicly traded stock. Nor is there any notice that the IRS did not accept a request for ID number. Nor is there any statutory or other basis to misappropriate monies merely because the IRS, without explanation, did not assign the foreign individual a permanent tax identification number.

(emphasis in original). The record before the court contains no action as having been taken by the IRS on plaintiff's second appeal, and the defendant has informed the court that as of May 27, 2020, no further action has been taken to date on plaintiff's second appeal.

## DISCUSSION

Plaintiff filed a complaint in this court alleging entitlement to a tax refund of $121,288.00 from the IRS. As discussed above, the record before the court is filled with multiple documents of the same forms and records, but a number of them are just slightly inconsistent and bear no date to clearly identify the times they were submitted to the IRS. Moreover, there are large chronological gaps between actions taken by the plaintiff and the IRS and correspondence between the parties. Regardless, plaintiff alleges that funds were wrongfully withheld from him because the stock transactions in which he engaged resulted in a net loss, and also that plaintiff is not subject to backup withholding tax in the first instance, because he is a nonresident alien who is "not required to file any income tax return." Plaintiff alleges that he nevertheless did file a 2005 Form 1040 requesting a refund of $121,288.00, which he states in his complaint was initially received by the IRS on April 14, 2009, along with his initially submitted Form W-7. Plaintiff further argues that

---

[13] Plaintiff ignores the July 29, 2015 disallowance letter from the IRS sent to plaintiff.

the IRS wrongfully remains in possession of his funds because the IRS incorrectly determined that he did not timely submit his tax return, which, according to plaintiff, should have operated also as a claim for refund. Plaintiff requests that the court "should direct Defendant to return the $121,288 deposited with the IRS and misappropriated by the Defendant as of December 27, 2005, plus 9% pre and post judgment interest compounded annually as is applicable in New York State on a judgment for conversion, plus costs and attorney fees." Finally, plaintiff asserts that he "should also be awarded damages pursuant to IRC 7433 [26 U.S.C. § 7433] for the reckless and intentional misconduct of the IRS in confiscating and retaining monies it illegally converted."[14]

As also indicated above, defendant filed a motion to dismiss plaintiff's complaint in its entirety for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Defendant asserts (1) that plaintiff did not file suit for the recovery of his overpayment within the time allowed for by 26 U.S.C. § 6532(a); and (2) this court is barred from hearing plaintiff's damages claim under 26 U.S.C. § 7433 for "reckless and intentional misconduct" by the IRS.

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)); see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009);

---

[14] On January 22, 2020, plaintiff's counsel of record requested the court "to grant a default judgment to Plaintiff on its Complaint and to impose additional sanctions against Defendant for its contempt of Court and its purging of spoliation of crucial documents from its files." (capitalization in original). During the course of proceedings in this case, plaintiff's counsel of record has accused both the IRS and defendant's counsel of record of concealing documents and other similar misconduct on several occasions. Although the IRS administrative record is hardly a model of best practices, the lengthy gaps between plaintiff's correspondences with the IRS also compounded the confusion in the case. Based on a review of the record before the court, the court finds insufficient evidence to support plaintiff's counsel of record's allegations of sanctionable activity.

see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp., 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

Recently, in Maine Community Health Options v. United States, 140 S. Ct. 1308 (2020), the United States Supreme Court described the test for determining whether a statute waives sovereign immunity, as follows:

> To determine whether a statutory claim falls within the Tucker Act's immunity waiver, we typically employ a "fair interpretation" test. A statute creates a "right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" United States v. White Mountain Apache Tribe, 537 U.S. 475, 472, 123 S. Ct. 1126, 155 L. Ed. 2d 40 (2003) (quoting Mitchell, 463 U.S. at 217, 103 S. Ct. 2961); see also Navajo Nation, 556 U.S. at 290, 129 S. Ct. 1547 ("The other source of law need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages"). Satisfying this rubric is generally both necessary and sufficient to permit a Tucker Act suit for damages in the Court of Federal Claims. White Mountain Apache, 537 U.S. at 472–473, 123 S. Ct. 1126.

Maine Cmty. Health Options v. United States, 140 S. Ct. at 1328 (emphasis in original; footnote omitted).

When deciding a case based on a lack of subject-matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint

are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); see also Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2018); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019) ("To avoid dismissal under RCFC 12(b)(6), a plaintiff 'must allege facts '"plausibly suggesting (not merely consistent with)" a showing of entitlement to relief.'" (quoting Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557))); McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The United States Supreme Court has indicated that:

A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The

Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 4 (2008) (citations omitted). The statute at 26 U.S.C. 7422(a) (2019) states:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Id.; see also United States v. Dalm, 494 U.S. 596, 609-10, reh'g denied, 495 U.S. 941 (1990); RadioShack Corp. v. United States, 566 F.3d at 1360 ("[I]n the context of tax refund suits, the [United States Supreme] Court has held that the Court of Federal Claims' Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."); Computervision Corp. v. United States, 445 F.3d 1355, 1363 (Fed. Cir.), reh'g and reh'g en banc denied, 467 F.3d 1322 (Fed. Cir. 2006), cert. denied, 549 U.S. 1338 (2007); Chi. Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994) (stating that section 7422(a) "imposes, as a jurisdictional prerequisite to a refund suit, filing a refund claim with the IRS that complies with IRS regulations" (citing Burlington N., Inc. v. United States, 684 F.2d 866, 868, 231 Ct. Cl. 222 (1982)); Kiselis v. United States, 131 Fed. Cl. 54, 60 (2017) ("To establish jurisdiction, Plaintiff must establish that he filed an administrative refund claim with the IRS prior to filing suit in this Court."); Fremuth v. United States, 129 Fed. Cl. 684, 688 (2016) ("This Court's exercise of [tax refund] jurisdiction is subject, however, to several statutory and jurisprudential prerequisites."); Smith v. United States, 111 Fed. Cl. 740, 743 (2013) (noting that Congress intended for 26 U.S.C. § 7422(a) to apply broadly); Dumont v. United States, 85 Fed. Cl. 425, 428 ("To recover under the Tucker Act, a plaintiff must adhere to the requirements of 26 U.S.C. § 7422(a), which states that 'no such suit shall be maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary.'" (quoting 26 U.S.C. § 7422(a))), aff'd, 345 F. App'x 586 (Fed. Cir. 2009). cert. denied, 559 U.S. 1101 (2010); Buser v. United States, 85 Fed. Cl. 248, 256 (2009).

Regarding the case filed in this court by plaintiff, Mr. Peretz, the statute at 26 U.S.C. § 6511(a) (2018) states that a

claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.

Id. The Treasury Regulation at 26 C.F.R. § 301.6402-3(a)(5) (2019), clarifies:

> A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X if applicable) shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return). For purposes of section 6511, such claim shall be considered as filed on the date on which such return (or amended return) is considered as filed.

Id. The Treasury Regulation further states:

> A return or amended return shall constitute a claim for refund or credit if it contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer or shall be applied as a credit against the taxpayer's estimated income tax for the taxable year immediately succeeding the taxable year for which such return (or amended return) is filed.

Id.; see also VanCanagan v. United States, 231 F.3d 1349, 1351 (Fed. Cir. 2000) (finding that "[u]nder Treas. Reg. § 301.6402–3(a), [plaintiff's] 1989 return, filed in October 1994, was a 'claim for credit or refund' under [26 U.S.C.] § 6511," and that "since the return was also the [plaintiff's] administrative claim for refund, the claim was timely because it was filed within three years of (actually, on the same date as) the filing of the return"); Kiselis v. United States, 131 Fed. Cl. at 60; Murdock v. United States, 103 Fed. Cl. 389, 394 (2012) ("The filing of a tax return reporting overpayments constitutes a simultaneous filing of such a claim.") (citing 26 C.F.R. § 301.6402-3(a)(5); VanCanagan v. United States, 231 at 1351; Wertz v. United States, 51 Fed. Cl. 443, 446 (2002)).

In the case currently before the court, defendant states that, "for purposes of defendant's motion to dismiss, defendant has assumed to be true that, on April 14, 2009, plaintiff filed with the IRS a Form 1040 for 2005, requesting a refund of $121,288." Accordingly, defendant does not argue that plaintiff's 2005 Form 1040 submitted on April 14, 2009 was untimely under the provisions of 26 U.S.C. § 7422 and § 6511. Defendant also does not argue that plaintiff's 2005 Form 1040 submitted on April 14, 2009 was not sufficient to have operated as plaintiff's claim for refund of $121,288.00 for the 2005 tax year. Instead, defendant argues that, according to the statute at 26 U.S.C. § 6532(a), plaintiff's current suit for the recovery of a $121,288.00 refund, which suit was filed on October 26, 2018, was untimely because the suit was brought more than two years after the first, July 29, 2015 Notice of Disallowance, was sent to plaintiff by certified mail. Plaintiff does not deny the existence of the July 29, 2015 Notice of Disallowance, but instead attempts to argue that because the July 29, 2015 Notice of Disallowance only mentions a claim received on March 9, 2015, and fails to reference his April 14, 2009 submission of his 2005 Form 1040, the July 29, 2015 Notice of Disallowance did not pertain to plaintiff's April 14, 2009 submission, and, thus, the July 29, 2015 Notice of

Disallowance did not trigger the statute of limitations in 26 U.S.C. § 6532(a)(1). Plaintiff further argues that the statute of limitations only began to run after the issuance of the second, December 2, 2019 Notice of Disallowance, which, according to plaintiff, is the first and only Notice of Disallowance to pertain to plaintiff's April 14, 2009 tax return submission.

<u>The Effect of the July 29, 2015 Notice of Disallowance</u>

The statute at 26 U.S.C. § 6532(a)(1) states:

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

<u>Id.</u>

Judges of the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims have traditionally found that complying with 26 U.S.C. § 6532 is a jurisdictional pre-requisite to filing suit in the United States Court of Federal Claims. <u>See</u> <u>RHI Holdings, Inc. v. United States</u>, 142 F.3d 1459, 1460 (Fed. Cir. 1998) (stating that "[j]urisdiction does not exist in the Court of Federal Claims over the claim because it is barred by the applicable statute of limitations" in 26 U.S.C. § 6532, and remanding the case "with instructions to dismiss the case for lack of jurisdiction."); <u>Bowerman v. United States</u>, 142 Fed. Cl. 794, 801 (2019) ("[I]f the IRS disallows the taxpayer's administrative refund request, the taxpayer must file suit within two years of the date that the IRS mailed the taxpayer the notice of that disallowance; otherwise, the court will lack jurisdiction." (citing <u>Harper Int'l Corp. v. United States</u>, 120 Fed. Cl. 66, 72–73 (2015) (plaintiff lacked subject-matter jurisdiction after failing to file refund suit within two years of the notice of disallowance)); <u>see also</u> <u>Ishler v. United States</u>, 115 Fed. Cl. 530, 534–35 (2014) ("Before filing a refund suit in this court, however, a taxpayer must satisfy certain jurisdictional prerequisites."); <u>Brach v. United States</u>, 98 Fed. Cl. 60, 67–68, <u>aff'd on other grounds</u>, 443 F. App'x 543 (Fed Cir. 2011).

The court, however, is also aware of the recent decision by the United States Court of Appeals for the Federal Circuit in <u>Walby v. United States</u>, 957 F.3d 1295 (Fed. Cir. 2020). The plaintiff in <u>Walby</u> did not file her administrative claim for refund for the 2014 tax year in a timely fashion, in violation of 26 U.S.C. §§ 7422(a) and 6511(a). <u>See</u> <u>Walby v. United States</u>, 957 F.3d at 1298. The lower court, the United States Court of Federal Claims, had dismissed Ms. Walby's 2014 refund suit, finding that her failure to comply with 26 U.S.C. §§ 7422(a) and 6511(a) resulted in a lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). <u>See</u> <u>Walby v. United States</u>, 144 Fed. Cl. 1, 11 (2019), <u>aff'd</u>, 957 F.3d 1295 (Fed. Cir. 2020). The Federal Circuit affirmed, but stated, albeit in dicta,

that "although the Claims Court properly dismissed Walby's 2014 refund claim because she did not meet the prerequisite for bringing such a claim, we think that, under Lexmark, Arbaugh, and their progeny, the court likely did not lack subject matter jurisdiction over this claim." Walby v. United States, 957 F.3d at 1301. The Federal Circuit in Walby further explained that, although "under our [the Federal Circuit's] existing case law," it is "correct" to treat the failure to timely file an "administrative refund claim . . . pursuant to 26 U.S.C. § 7422(a)" as a lack of subject matter jurisdiction, "it may be time to reexamine that case law in light of the Supreme Court's clarification that so-called 'statutory standing defects'—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction." Walby v. United States, 957 F.3d at 1299 (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014)). The Federal Circuit in Walby also stated that "[i]n view of the Supreme Court's guidance in Lexmark, it may be improper to continue to refer to the administrative exhaustion requirements of § 7422(a) and § 6511 as 'jurisdictional pre-requisites.'" See Walby v. United Sates, 957 F.3d at 1300.

In reaching the above conclusion, the Federal Circuit in Walby also relied on Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), in which the United States Supreme Court stated, when discussing United States v. Kwai Fun Wong, 575 U.S. 402 (2015):

> "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

Walby v. United States, 957 F.3d at 1300 (quoting Arbaugh v. Y&H Corp., 546 at 515–16). The Federal Circuit in Walby further stated that "[t]his 'clear statement' rule 'does not mean Congress must incant magic words. But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.'" Walby v. United States, 957 F.3d at 1300 (quoting United States v. Kwai Fun Wong, 575 U.S. at 410 (internal quotation marks omitted)). The Federal Circuit in Walby found that there was "no such clear statement apparent in the statutes at issue" in Walby, 26 U.S.C. §§ 7422(a) and 6511(a). See Walby v. United States, 957 F.3d at 1300. Therefore, although not explicitly stated by the Federal Circuit in Walby, it appears that the failure to meet the prerequisites of 26 U.S.C. §§ 7422(a) and 6511(a), instead, might have been subject to a dismissal as a failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). The case was affirmed, and not remanded, "because 'nothing in the analysis of the court [] below turned on the mistake, a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion.'" See Walby v. United States, 957 F.3d at 1301 n.4 (alteration in original) (quoting Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 254 (2010)).

Although the Walby case did not involve the statute of limitations set forth in 26 U.S.C. § 6532, which is the statute at the center of the issue in the above-captioned case, this court finds that the same reasoning could apply to 26 U.S.C. § 6532 in the future. See Walby v. United States, 957 F.3d at 1300 ("The Supreme Court has 'made plain that most time bars are nonjurisdictional.'" (quoting United States v. Kwai Fun Wong, 575 U.S.

at 410)). Indeed, 26 U.S.C. § 6532 contains "no such clear statement" that jurisdiction should be removed from this court in the event of a plaintiff's failure to comply, and, similar to the requirements of 26 U.S.C. § 7422 and § 6511, the statute of limitations in § 6532 is a threshold requirement. See Walby v. United States, 957 F.3d at 1300.

As discussed above, defendant in the above-captioned case argues that plaintiff's instant suit for the recovery of plaintiff's 2005 refund is untimely, pursuant to 26 U.S.C. § 6532, because plaintiff's instant suit was not filed within two years of the IRS' issuance of the July 29, 2015 Notice of Disallowance, which the IRS sent to plaintiff by certified mail. Plaintiff does not deny the existence of the July 29, 2015 Notice of Disallowance, but instead attempts to argue that because the July 29, 2015 Notice of Disallowance only mentions a "claim(s) received" on March 9, 2015, and fails to mention plaintiff's alleged April 14, 2009 submission of his 2005 Form 1040, the July 29, 2015 Notice of Disallowance did not pertain to plaintiff's April 14, 2009 submission to the IRS, and, thus, did not trigger the statute of limitations in 26 U.S.C. § 6532(a)(1) for filing in this court within two years of the Notice of Disallowance.

Although the 2005 Form 1040 attached to plaintiff's complaint is not date-stamped by the IRS, the plaintiff argues that his April 14, 2009 filing was his initial filing, and the defendant accepts, for the purposes of the motion to dismiss, that the IRS received plaintiff's 2005 Form 1040 on April 14, 2009, which included a claim for a $121,288.00 tax refund for the 2005 tax year. Defendant also accepts, for the purposes of the motion to dismiss, that the 2005 Form 1040 attached to plaintiff's complaint is a copy of plaintiff's initial filing of his 2005 Form 1040 that plaintiff states was received by the IRS on April 14, 2009.[15] The 2005 Form 1040 attached to plaintiff's complaint claims an overpayment in the amount of $121,288.00, and requests the full amount as a refund. Part of the confusion stems from the fact that the July 29, 2015 Notice of Disallowance issued by the IRS on July 29, 2015 does not refer to a claim received on April 14, 2009, but instead

---

[15] As discussed above, the record before the court on the current motion to dismiss supports that the IRS received a version of plaintiff's 2005 Form 1040 on April 14, 2009. In an October 1, 2009 letter to plaintiff, the IRS referred to a submission of plaintiff's 2005 Form 1040 tax return which plaintiff "submitted with your ITIN application." Plaintiff's Form W-7 ITIN application was initially submitted on April 14, 2009, as indicated by the IRS date-stamp on the Form W-7. Second, a letter from the IRS to plaintiff, dated December 23, 2009, states that the IRS contemplated assessing a $5,000.00 penalty because the IRS had "determined that the information you filed as a return of tax, or purported return of tax, on Apr. 14, 2009, is frivolous and there is no basis in the law for your position." It is less clear, however, whether the 2005 Form 1040 submitted with plaintiff's complaint is the version of the 2005 Form 1040 submitted on April 14, 2009 because, with the exception of the 2005 Form 1040s which plaintiff sent the IRS after this case commenced, the IRS did not produce from IRS files a version of plaintiff's 2005 Form 1040 which is identical to the one submitted with plaintiff's complaint. The IRS did produce one version which is all but identical to the version submitted with plaintiff's complaint, except that it is unsigned by plaintiff. This latter version does not contain a date-stamp of receipt from the IRS.

refers to a "claim(s) received" by the IRS on March 9, 2015. The March 9, 2015 IRS date-stamp receipt, however, appears on the letter submitted by plaintiff's representative, Mr. Abraham Dan, which letter referred to and enclosed a copy of plaintiff's 2005 tax return claiming $121,288.00 as a refund. Based on the explanation for the disallowance provided by the IRS in the July 29, 2015 Notice of Disallowance,[16] the IRS may not have considered that plaintiff appears to have filed a timely return operating which operated as a claim for refund on April 14, 2009. The IRS July 29, 2015 Notice of Disallowance, however, does specifically reference: "Amount of Claim: $121,288.00," for the "Tax period: Dec. 31, 2005." Plaintiff's complaint in the case currently before this court also seeks the exact amount of refund claimed owed to plaintiff for the 2005 tax year, $121,288.00 (plus interest). As indicated in plaintiff's complaint, plaintiff requests

> [t]his Honorable Court should direct Defendant to return the $121,288 deposited with the IRS and misappropriated by the Defendant as of December 27, 2005, plus 9% pre and post judgment interest compounded annually as is applicable in New York State on a judgment for conversion, plus costs and attorney fees.

Plaintiff's case in this court appears identical to the claim which was disallowed by the IRS in its July 29, 2015 Notice of Disallowance. Plaintiff's complaint, therefore, should be governed by 26 U.S.C. § 6532(a)(1), which, as noted above, states:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1). The statute at 26 U.S.C. § 6532(a) does not allow for an "implied equitable exception" to the time limits on which plaintiff could try to rely. See RHI Holdings,

---

[16] The July 29, 2015 Notice of Disallowance, which states: "Date of claim(s) received: Mar. 09, 2015," provides the following reason for disallowance:

> You filed your claim for credit or refund more than 3 years after the tax return due date. A claim must be filed within 3 years from the time the return was filed. In addition, the amount of the tax that can be credited or refunded is limited to the tax paid during the three years immediately preceding the filing of the claim (plus the period of any extension of time to file the tax return). Withheld tax and estimated tax payments are deemed to be paid on the last day prescribed (i.e., April 15) for filing your tax return. The excess of any amount allowable for the earned income credit over the actual income tax is treated in a similar manner to these prepaid credits.

<u>Inc. v. United States</u>, 142 F.3d at 1462. The statute at 26 U.S.C. § 6532(a)(1) directs the court to consider whether the lawsuit and the part of the claim which was previously disallowed are related. <u>See</u> <u>id.</u> If so, then the taxpayer's suit for recovery must be dismissed if brought after two years from the date the Notice of Disallowance was sent to plaintiff by certified mail. <u>See</u> <u>id.</u> Even though the July 29, 2015 Notice of Disallowance does not reference that plaintiff filed his 2005 Form 1040 requesting a refund of $121,288.00 on April 14, 2009, and even though the July 29, 2015 Notice of Disallowance listed the wrong filing date for the claim, the July 29, 2015 Notice of Disallowance addressed the exact same amount plaintiff claimed was owed to him in his April 14, 2009 tax return for the 2005 tax year. Therefore, the court concludes that it is bound by the application of the statute of limitations set forth in 26 U.S.C. § 6532(a)(1).

Plaintiff also tries to argue that he did not receive a copy of the July 29, 2015 Notice of Disallowance. The statute at 26 U.S.C. § 6532(a)(1), quoted above, requires the Notice of Disallowance to be sent by "certified mail or registered mail." <u>Id.</u> Whether or not plaintiff received the July 29, 2015 Notice of Disallowance sent by the IRS, however, does not prevent the application of 26 U.S.C. § 6532, as the "'two-year statute of limitations laid out in 26 U.S.C § 6532(a)(1) begins to run in every case on the date the IRS mails the taxpayer a notice of disallowance, whether or not the taxpayer actually receives the notice.'" <u>Hale v. United States</u>, 143 Fed. Cl. 180, 185 (2019) (quoting <u>Rosser v. United States</u>, 9 F.3d 1519, 1523 (11th Cir. 1993)); <u>see also</u> <u>Bowerman v. United States</u>, 142 Fed. Cl. 794, 801 (2019); <u>Fremuth v. United States</u>, 129 Fed. Cl. 684, 689 (2016). As discussed above, the Notice of Disallowance is dated July 29, 2015, and "CERTIFIED MAIL" is printed at the top of the letter. (capitalization in original). Neither party has introduced any evidence suggesting that the Notice of Disallowance was not sent on July 29, 2015 by certified mail. <u>See</u> <u>Cadrecha v. United States</u>, 104 Fed. Cl. 296, 303 n.9 (2012) ("The Court assumes that the date appearing on the notice of disallowance was the date on which the notice was mailed." (citing <u>Tiberio v. Allergy Asthma Immunology of Rochester</u>, 664 F.3d 35, 37 (2d Cir. 2011) ("There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice.")))). Plaintiff has not provided evidence to the court to rebut the presumption that the Notice of Disallowance was sent to plaintiff on July 29, 2015, by certified mail.

In sum, because plaintiff's case filed in this court relates to the same claim for refund of $121,288.00 for the 2005 tax year included as an alleged overpayment of plaintiff's tax liability in his 2005 tax return, and the same claim was disallowed by the IRS in the July 29, 2015 Notice of Disallowance, plaintiff was required under 26 U.S.C. § 6532(a)(1) to file suit within two years from July 29, 2015. Plaintiff, however, brought this suit on October 26, 2018, more than two years after the July 29, 2015 Notice of Disallowance was sent to him. Therefore, notwithstanding the additional Notice of Disallowance issued on December 2, 2019, discussed below, plaintiff has failed to comply with the time requirements of 26 U.S.C. § 6532(a)(1) to file a timely suit in this court.

The Effect of the December 2, 2019, Second Notice of Disallowance

As discussed above, on December 2, 2019, after the commencement of the case in this court, and after the parties had completed briefing defendant's motion to dismiss, the IRS issued an unexpected, second Notice of Disallowance related to plaintiff's request for refund for the 2005 tax year. The court ordered the parties to file supplemental briefing to discuss possible impacts of this additional Notice of Disallowance on defendant's motion to dismiss. Plaintiff now argues that the December 2, 2019 Notice of Disallowance was the first and only notice of disallowance to trigger the statute of limitations pursuant to 26 U.S.C. § 6532(a)(1), and, therefore, that plaintiff's instant action, which was filed before the December 2, 2019 Notice of Disallowance was issued, was timely given the two-year limitation to file suit. Alternatively, plaintiff argues that the December 2, 2019 Notice of Disallowance "triggered a new two year statute of limitation."

In response, defendant argues that the December 2, 2019 Notice of Disallowance does not restart plaintiff's time to file suit. Defendant relies on the language of 26 U.S.C. § 6532(a)(4), which states: "**Reconsideration after mailing of notice.**--Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." Id. (emphasis in original). Defendant also relies on the framework set forth by the United States Supreme Court in United States v. Brockamp, 519 U.S. 347 (1997), RHI Holdings, Inc. v. United States, 142 F.3d 1459, and Marcinkowsky v. United States, 206 F.3d 1419 (Fed. Cir. 2000), which, together, direct that that 26 U.S.C. § 6532 does not "contain an implied 'equitable' exception." RHI Holdings v. United States, 142 F.3d at 1461–63; see also Marcinkowsky v. United States, 206 F.3d at 1422.

Albeit almost three years after the last communication from the IRS on October 27, 2016, which had denied plaintiff's administrative appeal of the July 29, 2015 Notice of Disallowance, plaintiff's counsel of record in the above-captioned case sent a September 25, 2019 letter to the IRS, inquiring about plaintiff's unfulfilled, claimed refund and requesting documents in the IRS' possession relating to plaintiff's attempt to secure a refund for the 2005 tax year. Plaintiff's counsel of record's September 25, 2019 letter to the IRS states:

> Please be advised that Mr. Peretz is a non-resident who never had a Social Security number. In 2005, the non-resident had a brokerage account in Citibank. Following a loss in the brokerage account in excess of $1,000,000, Citibank incorrectly withheld $150,000 of net proceeds after loss and forwarded the $150,000 to the IRS. The Form 1040 request for refund of the $150,000 erroneous withholding was filed with the IRS under Social Security number: [Redacted]-4444. Please see attachment showing Citibank's assigned [Redacted]-4444. Please see attached Form 1040 for 2005. Subsequently, the IRS assigned a Temporary Taxpayer Identification Number [Redacted]-6665. Please see attached IRS letter dated October 1, 2009. The non-resident, Meir Peretz never requested a social security

number from the Social Security Administration or an IRS Individual Taxpayer Identification Number.

We are seeking documents that were filed and accepted by the IRS under these identification numbers, [Redacted]-4444 or [Redacted]-6665.

As discussed above, it appears that the 2005 Form 1040 in the record before the court, which is date-stamped received by the IRS on September 30, 2019, is the 2005 Form 1040 that plaintiff's counsel of record enclosed with his September 25, 2019 letter to the IRS, quoted above. The 2005 Form 1040 date-stamped September 30, 2019 is identical to the 2005 Form 1040 attached to plaintiff's complaint. Indeed, it appears to have been taken directly from the records of the case filed in this court, as it bears the ECF docket information that is associated with the above-captioned matter, and contains the ECF docket number filing entry that is associated with the 2005 Form 1040 attached to plaintiff's complaint in the case before this court, which was filed in this court on October 26, 2018. The only difference between the 2005 Form 1040 attached to plaintiff's complaint and the 2005 Form 1040 sent to the IRS by plaintiff's counsel of record on September 25, 2019 is that, according to plaintiff in its supplemental briefing, "the IRS, on its own initiative, annotated the copy of the 2005 Form 1040 that it stamped as received on September 30, 2019 as an Exhibit from Plaintiff's attorney. The IRS called it a 1040X and wrote the word 'Amended' on it." (capitalization in original).

Plaintiff's counsel of record's letter and enclosures to the IRS submitted on September 25, 2019 offer no new theory or basis for entitlement to the funds plaintiff claims he is owed, from the basis of the claim which had been previously disallowed by the July 29, 2015 Notice of Disallowance. Plaintiff, in counsel's letter, again requested a refund stemming from an alleged overpayment of monies withheld from plaintiff's Citicorp brokerage account in 2005. Moreover, the statute at 26 U.S.C. § 6532(a)(4) explicitly states: "Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." Id. There is also no indication that plaintiff had ever received a valid ITIN or social security number or submitted it to the IRS.

This court and its predecessor courts, as well as courts in other circuits, have long held that repetitively filed claims do not extend the time for which a plaintiff can file suit under 26 U.S.C. § 6532. See Southeast Bank of Orlando v. United States, 230 Ct. Cl. 277, 285, 676 F.2d 660, 665 (1982) ("The cases have consistently held that a new claim founded on the same grounds does not extend the statute of limitations." (citing B. Altman & Co. v. United States, 69 Ct. Cl. 721, 727, 40 F.2d 781, 784, cert. denied, 282 U.S. 863, 51 S. Ct. 36 (1930); Stratmore v. United States, 463 F.2d 1195, 1196–97 (3rd Cir. 1972); 18th Street Leader Stores v. United States, 142 F.2d 113, 115–16 (7th Cir.), cert. denied, 323 U.S. 725 (1944))); see also Ragan-Malone Co. v. United States, 93 Ct. Cl. 316, 338, 38 F. Supp. 290, 300 (1941); Byrne v. United States, 127 Fed. Cl. 284, 297–98 (2016)); Pacetti v. United States, 50 Fed. Cl. 239, 249 (2001); Jones v. United States 26 Cl. Ct. 424, 425–26, aff'd, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). The December 2, 2019

Notice of Disallowance in the above-captioned case followed the mailing of the July 29, 2015 Notice of Disallowance, which was sent by certified mail to the plaintiff, in which the same claimed amount of $121,288.00 for the 2005 tax year was disallowed. Therefore, the December 2, 2019 Notice of Disallowance is an "action" that "shall not operate to extend the period within which suit may be begun." See 26 U.S.C. § 6532(a)(4). The court finds no basis under the applicable statutory and case law guidelines as to how the December 2, 2019 Notice of Disallowance could operate to extend plaintiff's statute of limitations to file suit in this court.

The court recognizes that in 1982, in Southeast Bank of Orlando, 230 Ct. Cl. 277, 676 F.2d 660, the United States Court of Claims, the predecessor court to this court, issued a decision finding that the issuance of a second Notice of Disallowance operated to extend the two-year time limitation under 26 U.S.C. § 6532(a).[17] In Southeast Bank of Orlando, the plaintiffs argued to the IRS that they were eligible for a deduction of their 1973 tax liability under 26 U.S.C. § 691(c) (1976), "for estate tax for income in respect of decedents." Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 279. After the IRS denied the deduction and the taxpayers paid the contested tax, the plaintiffs filed a claim for refund with the IRS on August 20, 1975, which the IRS disallowed on January 14, 1977. Id. On March 24, 1978, the plaintiffs filed a second claim for refund, this time asserting that if plaintiffs were not eligible for the refund under 26 U.S.C. § 691, plaintiffs were eligible under 26 U.S.C. § 1014 (1976). Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 279. The IRS disallowed the second claim for refund on June 1, 1978. Id. The plaintiffs next filed a lawsuit on May 29, 1980, "challenging the [IRS] Service determinations for 1973 under [26 U.S.C. §] 691 and [§] 1014." See Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 280. Plaintiffs' suit was filed outside of the two-year time limitation with regard to the first notice of disallowance, but within the two-year time limitation with regard to the second notice of disallowance. See id. The defendant moved to dismiss plaintiffs' case based on the expiration of the two-year time limitation from the issuance of first notice of disallowance. See id. The Southeast Bank of Orlando court stated:

> All admit that, if the suit under § 691 must rest on the first refund claim for 1973, it is far beyond the two-year limit. The only real issue is whether the second disallowance founded another claim under § 691 which can now be vindicated because this suit came less than two years after that second

---

[17] In Estate of Orlando v. United States, 94 Fed. Cl. 286 (2010), a judge of this court, in a footnote, identified that plaintiff cited to L & H Co. v. United States and Southeast Bank of Orlando, and stated that "[b]oth of these cases were decided before RHI Holdings, in which the Federal Circuit explicitly stated that there is no equitable exception to the statute of limitations in Section 6532(a)(1)." Estate of Orlando v. United States, 94 Fed. Cl. at 293 n.9. The Estate of Orlando court also indicated that another decision in this court, Marcinkowsky v. United States, 44 Fed. Cl. 610 (1999), questioned whether Southeast Bank of Orlando "'remains good law' after RHI Holdings." Estate of Orlando v. United States, 94 Fed. Cl. at 293 n.9 (quoting Marcinkowsky v. United States, 44 Fed. Cl. at 613).

denial of a refund. Our rulings are that (1) taxpayers and the court can and should reasonably view the second disallowance as incorporating a reconsideration of the § 691 claim previously rejected, and (2) a formal reconsideration and disallowance of this type begins a new period of limitations for suit.

Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 280.

The Southeast Bank of Orlando court also explained that it was bound by the Court of Claims' prior decision in Heath v. United States, 219 Ct. Cl. 582 (1979), which had found that the government was "equitably estopped" from raising the statute of limitations after the IRS had issued a second notice of disallowance correcting an error in the first notice of disallowance. Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 283. In Southeast Bank of Orlando, the court continued, however:

> Even if we could disavow the rationale of Heath, we are not persuaded by the legislative history of [§] 6532 that Congress intended absolutely to prohibit extension of the time via a formal reconsideration and disallowance. The problem being addressed by Congress when it enacted subsection 6532(a)(4) was that the IRS could be said to reopen a claim and yet never formally redecide it. This left the statute of limitations open indefinitely. It was the problem created by the failure to close a case that led to (a)(4), not problems created by any and all reconsiderations, no matter how formal and definite a closing or disallowance. . . .

> It is clear, however, that Congress, at least the House, was concerned about taxpayers extending the deadline indefinitely. Even in 1936 this could occur only if there was no formal decision made on reconsideration. Pacific Mills v. Nichols, 72 F.2d 103, 107 (1st Cir. 1934). If a decision is made on reconsideration the deadline is extended to two years after the second notice, as the Committee notes.[18]

---

[18] The House Committee Report stated:

> Section 208 amends section 3225 of the Revised Statutes and is designed to permit further consideration or action by the Commissioner of Internal Revenue, in connection with a claim for refund after he has once disallowed it, without extending the period within which a suit for recovery of the refund may be brought. Existing law now requires that a taxpayer brings suit within 2 years after the Commissioner has disallowed his claim for refund. The courts have held that if the Commissioner reconsiders a claim after he has disallowed it, the 2-year period does not begin to run until a second decision has been made. It is obviously in the interest of the taxpayer that the Commissioner should reconsider claims for refund, and thus permit the taxpayer to have an opportunity to secure a refund administratively without resort to court action. Under existing court decisions, there is so much

Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 284–85 (footnote omitted). Thus, for reasons other than equitable considerations, which it considered under Heath, the Court of Claims in Southeast Bank of Orlando also found that the legislative history of 26 U.S.C. § 6532(a)(4) allowed for the Southeast Bank of Orlando plaintiff's second notice of disallowance to extend the two-year period in which to file suit.[19]

The Court of Claims in Southeast Bank of Orlando distinguished the plaintiffs' case from prior case law which did not allow repetitively filed claims for refund to extend the period in which to file suit:

> There was also no possibility in 1936 that claimants could extend the deadline indefinitely by repeatedly filing new refund claims on the same grounds, thereby forcing reconsideration and extension of the filing time. The cases have consistently held that a new claim founded on the same grounds does not extend the statute of limitations.

Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 284 (citing B. Altman & Co. v. United States, 69 Ct. Cl. at 727; Stratmore v. United States, 463 F.2d at 1196–97; 18th Street Leader Stores v. United States, 142 F.2d at 115–16).

Unlike the plaintiffs in Southeast Bank of Orlando, which was first disallowed a claim under one alleged avenue of recovery, and then subsequently disallowed a second claim under a different avenue of recovery, see Southeast Bank of Orlando v. United States, 230 Ct. Cl. at 279–80, the December 2, 2019 Notice of Disallowance issued to plaintiff by the IRS in the above-captioned case was issued in response to a repetitively

---

> uncertainty as to what constitutes reconsideration of a claim, that the Bureau of Internal Revenue is reluctant to take action with respect to a claim after it has once been disallowed, because of the fear that the case may be reopened indefinitely and thus result in further administrative expense with respect to such claim. It is felt that when the Bureau answers letters of inquiry and extends to taxpayers the courtesy of investigating into closed files, it should not be compelled to do so at the risk of indefinitely prolonging the period of limitations. The proposed amendment it is felt will permit a more liberal treatment on the part of the Bureau of Internal Revenue in reconsidering claims for refund once they have been rejected, and will eliminate the confusion now existing as to just what constitutes reconsideration of a claim so as to extend the period of limitations.

H. Rep. No. 2818, 74th Cong., 2d Sess. 11 (1936) (emphasis added).

[19] As will be discussed below, to the extent that Southeast Bank of Orlando found that the statute at 26 U.S.C. 6532 allowed for equitable considerations, the Brockamp/RHI Holdings/Marcinkowsky line of cases, however, appear to have since rejected that proposition.

filed claim expressing no new theories or new bases for recovery. As discussed above, the court has found no basis in the record before the court for plaintiff's repetitively filed claim for refund to extend the applicable statute of limitations just because the IRS issued an additional formal notice of disallowance.

Defendant relies on United States v. Brockamp, 519 U.S. 347, RHI Holdings, Inc. v. United States, 142 F.3d 1459, and Marcinkowsky v. United States, 206 F.3d 1419 to argue that the time for plaintiff's claim is not subject to any equitable exceptions. In Brockamp, the United States Supreme Court found that Congress did not intend for the equitable tolling doctrine to apply to 26 U.S.C. § 6511, the provision which places a limitation on the time in which a taxpayer can file an administrative claim for refund with the IRS. The Supreme Court held that a taxpayer who exceeded the filing time limitation due to a "mental disability" was not entitled to equitable relief. See generally United States v. Brockamp, 519 U.S. at 349–54.

In RHI Holdings, the United States Court of Appeals for the Federal Circuit extended the Brockamp analysis to the statute which is also at issue in the above-captioned case, 26 U.S.C. § 6532, and found that there was no equitable exception available under 26 U.S.C. § 6532. See generally RHI Holdings, Inc. v. United States 142 F.3d at 1460–63. The plaintiff in RHI Holdings alleged that the IRS had acted in a manner which "confused RHI into allowing the statutory period to lapse." Id. at 1461. In RHI Holdings, the plaintiff executed a "Waiver of Statutory Notification of Claim Disallowance," and the court found that the "two year statutory period begins when the waiver is filed," as opposed to starting the two-year period when a notice of disallowance is issued. Id. at 1460 (citing 26 U.S.C. § 6532(a)(3) ("If any person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2-year period prescribed in paragraph (1) shall begin on the date such waiver is filed.")). Despite the plaintiff's execution of the waiver, the IRS still issued a notice of disallowance for plaintiff's underlying claim for refund. See id. The RHI Holdings plaintiff then filed suit before the expiration of two years from the notice of disallowance, but after the expiration of two years from the filing of the waiver. See id. The RHI Holdings plaintiff argued that the IRS' actions after the waiver was filed misled plaintiff into believing that the time to file suit had been extended. See id. at 1461. The United States Court of Appeals for the Federal Circuit in RHI Holdings found that, regardless of whether the actions of the IRS "confused RHI into allowing the statutory period to lapse," 26 U.S.C. § 6532 did not "contain an implied 'equitable' exception under the Supreme Court's analysis delineated in Brockamp," and, therefore, plaintiff's time to file suit was not extended by the alleged misleading activity of the IRS.[20] See RHI Holdings v. United States, 142 F.3d at 1461–62. Furthermore, the Federal Circuit in RHI Holdings found that the language in 26 U.S.C. § 6532(a)(4) "explicitly prohibits equitable

---

[20] The court notes that plaintiff in the above-captioned case does not allege that the issuance of the December 2, 2019 Notice of Disallowance somehow misled plaintiff into allowing the two-year time limitation triggered by the July 29, 2015 Notice of Disallowance to lapse. Indeed, plaintiff could not allege any such occurrence, as the December 2, 2019 Notice of Disallowance was issued well after the two-year time limitation triggered by the July 29, 2015 Notice of Disallowance had lapsed.

considerations based on the actions of the IRS after a notice is mailed." <u>RHI Holdings v. United States</u>, 142 F.3d at 1462 (citing 26 U.S.C. § 6532(a)(4) ("Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun.")

Similar to the reasoning in <u>RHI Holdings</u>, in <u>Marcinkowsky</u>, the United States Court of Appeals for the Federal Circuit again found that there was no equitable exception available under 26 U.S.C § 6532. The <u>Marcinkowsky</u> plaintiff also had alleged that he was misled by the IRS into allowing the timeframe under 26 U.S.C. § 6532 to lapse. <u>See Marcinkowsky v. United States</u>, 206 F.3d at 1421. After Mr. Marcinkowsky received $100,000.00 in a 1993 settlement for wrongful termination by his employer in 1991, and after he timely paid income tax on it for the 1993 tax year, the plaintiff filed "an amended tax return on July 25, 1994, claiming an income tax refund of $26,612 on the ground that the Union Carbide [plaintiff's previous employer] settlement proceeds were excludable from his gross income under 26 U.S.C § 104(a)(2) (1994) and therefore non-taxable." <u>Marcinkowsky v. United States</u>, 206 F.3d at 1420. The IRS issued a Notice of Disallowance of Mr. Marcinkowsky's claim on September 20, 1994, by certified mail. <u>Id.</u> On June 2, 1995 which was within the two-year period to file suit triggered by the September 20, 1994 Notice of Disallowance, Mr. Marcinkowsky filed a second refund request, for $5,021.20 in FICA taxes. <u>Id.</u> Also before the two-year period to file suit triggered by the first, September 20, 1994 Notice of Disallowance had ended, on August 21, 1995, the IRS issued Mr. Marcinkowsky a second Notice of Disallowance for plaintiff's FICA claim. <u>Id.</u> "Mr. Marcinkowsky then requested administrative review at the IRS. Various exchanges of correspondence with the IRS continued until 1998, including several requests by the Service for additional information." <u>Id.</u> at 1420–21. On November 16, 1998, which was after the expiration of two years from both Notices of Disallowance issued to the plaintiff, "Mr. Marcinkowsky filed suit in the Court of Federal Claims," seeking "a refund of the income and FICA taxes paid on the Union Carbide settlement." <u>Id.</u> at 1421. Mr. Marcinkowsky argued that "the IRS misled him by continually requesting additional information, thereby causing him to miss the two-year limit for appeal of the original decisions." <u>Id.</u> The United States Court of Appeals for the Federal Circuit affirmed the lower court's dismissal of plaintiff's refund suit, finding that plaintiff's suit was untimely under 26 U.S.C. § 6532, and stated:

> Applying the <u>Brockamp</u> decision, the Federal Circuit held in <u>RHI Holdings, Inc. v. United States</u>, that no implied equitable exception was contained in [26 U.S.C.] § 6532, and strictly applied the statute of limitations. The Court observed that [26 U.S.C.] § 6532(a)(4) explicitly warns that IRS reconsideration does not extend the time to file a refund suit.

<u>Marcinkowsky v. United States</u>, 206 F.3d at 1421 (internal citations omitted).

As discussed above, plaintiff's arguments in the above-captioned case must fail because the December 2, 2019 Notice of Disallowance was issued in response to a repetitively filed claim which claimed the same amount of refund, $121,288.00, as the

claim made in plaintiff's April 14, 2009 initial tax filing with the IRS, which claim was previously disallowed by the July 29, 2015 Notice of Disallowance, and which expressed no new basis for recovery from the claim which had been previously disallowed. Therefore, the December 2, 2019 Notice of Disallowance is an "action" that "shall not operate to extend," or in plaintiff's case, restart, "the period within which suit may be begun" in this court. <u>See</u> 26 U.S.C. § 6532(a)(4).[21]

<u>Plaintiff's Theory of "Payments" vs. "Deposits"</u>

The plaintiff also offers several other theories of recovery, including whether the funds withheld from the IRS were "payments" or "deposits." Plaintiff asserts that he "seeks to recover confiscated monies that were never intended to be and would not be tax payments, and therefore at most were involuntary deposits," for which reason "[i]t follows that the court's jurisdiction over such suit is not limited by the statute of limitations for refund suits set forth in [26 U.S.C. §] 6532(a) that applies only to tax payments. There is no dispute that plaintiff's funds were withheld from plaintiff's Citicorp account as backup withholding tax. Although plaintiff disputes the propriety of such withholding, in order to file suit in this court, plaintiff was first required to submit a claim for refund to the IRS pursuant to 26 U.S.C. § 7422(a). That statute states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary.

<u>Id.</u> (emphasis added). As discussed above, based on the record before the court, plaintiff first filed a claim for refund when he filed his 2005 Form 1040 tax return, as accepted for the purposes of this lawsuit, on April 14, 2009. The statute at 26 U.S.C. § 6532(a)(1) states that the two-year limitation to file suit "under section 7422(a)," applies to "the recovery of <u>any</u> internal revenue tax, penalty, <u>or other sum</u>." 26 U.S.C. § 6532(a)(1)

---

[21] This court also notes the unreported decision recently issued by the United States Court of Appeals for the Federal Circuit in <u>Taha v. United States</u>, 757 F. App'x 947 (Fed. Cir. 2018), which contains somewhat similar facts to the above-captioned case. As in plaintiff's current case in this court, the IRS in <u>Taha</u> issued a second notice of disallowance after the initial period to file suit had lapsed. The <u>Taha</u> plaintiff argued that the suit was timely because it was brought within two years of a second notice of disallowance. <u>Id.</u> at 951. The Federal Circuit stated that "the relevant date that triggers the two-year limitation period is the date of mailing of the first notice of disallowance with respect to any tax refund claim." <u>Id.</u> In <u>Taha</u> the Federal Circuit further stated that "under [26 U.S.C.] § 6532(a)(4), any subsequent 'IRS reconsideration does not extend the time to file a refund suit.'" <u>Taha v. United States</u>, 757 F. App'x at 951 (quoting <u>Marcinkowsky v. United States</u>, 206 F.3d at 1422).

(emphasis added); see also Strategic Housing Finance Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1329–30 (Fed. Cir. 2010) ("[26 U.S.C. §] 6532(a) means what it says: the statute clearly applies to claims to recover any 'tax, penalty, or other sum' when read together with § 7422(a). . . . [T]he timing limitations in § 6532(a) apply to a claim to recover not only any internal revenue tax, but claims to recover any non-tax amounts such as penalties or other sums."). Even under plaintiff's "deposit" theory, the funds withheld from plaintiff's Citicorp account and deposited with the IRS are the funds which plaintiff now seeks to recover in the above-captioned suit in this court. Therefore, plaintiff's assertion that the two-year time limitation to file suit under 26 U.S.C. § 6532 would not apply to "deposits," including the monies withheld from plaintiff's Citicorp stock dealings, is without merit.

Plaintiff's Claim for Damages Under 26 U.S.C. § 7433

Aside from alleging entitlement to the $121,288.00 refund, plus interest, in this court, plaintiff also asserts entitlement to damages pursuant to 26 U.S.C. § 7433(a). The statute at 26 U.S.C. § 7433(a) states:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

Id. When analyzing a claim brought under 26 U.S.C. § 7433(a), the United States Court of Appeals for the Federal Circuit has stated that "[t]he Court of Federal Claims is not a district court of the United States, and therefore it lacks subject matter jurisdiction" over claims brought under 26 U.S.C. § 7433(a). Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Wade v. United States, 138 Fed. Cl. 276, 278 (2018) ("Similarly, jurisdiction under Section 7433, which permits a taxpayer to recover damages resulting from reckless, intentional, or negligent actions of any officer or employee of the IRS, is vested exclusively in the district courts." (citing 26 U.S.C. § 7433(a); and Ledford v. United States, 297 F.3d at 1382)); Kiselis v. United States, 131 Fed. Cl. at 62 ("To the extent that Plaintiff seeks damages stemming from the IRS's placement of a levy on his bank accounts as an unauthorized collection, the district courts of the United States have exclusive jurisdiction over such claims." (citing 26 U.S.C. § 7433; and Ledford v. United States, 297 F.3d at 1382)). Thus, this court lacks jurisdiction over plaintiff's claim for damages resulting from an allegedly improper action by the IRS under 26 U.S.C. § 7433.

**CONCLUSION**

In sum, although it appears from the record before the court that plaintiff filed his 2005 Form 1040 with the IRS on April 14, 2009 in a timely fashion, that fact does not excuse plaintiff from missing the two-year statutory filing deadline during which plaintiff could have filed suit after the issuance of the July 29, 2015 Notice of Disallowance,

pursuant to 26 U.S.C. § 6532. Plaintiff has provided the court with no reason as to why this suit was not brought within such time period, although, following the decisions in the United States Supreme Court and the United States Court of Appeals for the Federal Circuit in Brockamp, RHI Holdings and Marcinkowsky, respectively, an explanation would not have altered the result, as those courts have not recognized equitable exceptions under 26 U.S.C. § 6532 in which to file a lawsuit outside of the applicable two-year time limitation. Furthermore, plaintiff's repetitive filings with the IRS of his 2005 Form 1040 and repeated requests for information, which ultimately resulted in the issuance of a second Notice of Disallowance on December 2, 2019, do not alter the time in which to file suit, nor does the issuance of the December 2, 2019 Notice of Disallowance operate to restart the period in which plaintiff should have filed suit. The record before the court indicates that plaintiff missed multiple opportunities to respond to IRS inquiries, or waited years to do so. Moreover, the court is without jurisdiction over plaintiff's claim for damages under 26 U.S.C. § 7433 for the alleged "reckless and intentional misconduct" of the IRS.

The court notes, that in light of the dicta included in the recently issued decision by the United States Court of Appeals for the Federal Circuit in Walby, discussed above, defendant's RCFC 12(b)(1) motion to dismiss for lack subject-matter jurisdiction over plaintiff's claim for refund for $121,288.00 for the 2005 tax year, plus interest, pursuant to 26 U.S.C. § 6532, might in the future be considered as a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). Under either scenario, whether as a motion to dismiss for absence of jurisdiction or for failure to state a claim, defendant's motion to dismiss plaintiff's claim to recover $121,288.00, plus interest, must be **GRANTED**. Furthermore, defendant's motion to dismiss for lack of subject-matter jurisdiction over plaintiff's claim for damages under 26 U.S.C. § 7433 for the alleged "reckless and intentional misconduct" of the IRS also is **GRANTED**. Plaintiff's complaint in its entirety, therefore, is **DISMISSED**. Additionally, based on the record before the court, plaintiff's motion for sanctions is **DENIED**, as is plaintiff's motion for a default judgment **DENIED** as well. The Clerk of the Court is instructed to enter **JUDGMENT** consistent with this Opinion.

        **IT IS SO ORDERED.**

s/Marian Blank Horn<br>
**MARIAN BLANK HORN**<br>
**Judge**