# In the United States Court of Federal Claims

No. 18-1699T

Filed: December 4, 2020

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * *<br>**MEIR PERETZ,**<br>            **Plaintiff,**<br>**v.**<br>**UNITED STATES,**<br>            **Defendant.**<br>* * * * * * * * * * * * * * * * * * * * | Tax; Motion for Reconsideration; 26 U.S.C. § 6532 Statute of Limitations; Motion to Amend Complaint; Refund; Deposit. |

**Lawrence R. Kulak**, Law Office of Lawrence R. Kulak, New York, NY, for plaintiff.

**Karen E. Servidea**, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her was **Mary M. Abate**, Assistant Chief, Court of Federal Claims Section, **David I. Pincus**, Chief, Court of Federal Claims Section, and **Richard E. Zuckerman**, Principal Deputy Assistant Attorney General, Tax Division, Department of Justice.

# O P I N I O N

**HORN, J.**

The court issued a decision on May 31, 2020 granting defendant's motion to dismiss the above-captioned case, and judgment in this court was entered on June 1, 2020. See generally Peretz v. United States, 148 Fed. Cl. 586 (2020). The May 31, 2020 Opinion is incorporated into this Opinion. Thereafter, the plaintiff, Meir Peretz, filed a motion asking the court to reconsider its decision granting defendant's motion to dismiss plaintiff's complaint. Plaintiff, Meir Peretz, originally filed a complaint in the United States Court of Federal Claims against the United States alleging entitlement to a tax refund of $121,288.00 from the Internal Revenue Service (IRS).[1] A majority of the monies were withheld from plaintiff's Citicorp, Inc. (Citicorp) brokerage account from the proceeds of two stock sales in 2005 as backup withholding tax. The balance of the monies were withheld due to stock dividends paid on plaintiff's stocks. Plaintiff alleged that the funds were wrongfully withheld because the stock transactions resulted in a net loss, and that,

---

[1] Initially, plaintiff filed his complaint pro se. Subsequent filings for plaintiff were submitted by plaintiff's counsel of record, Lawrence R. Kulak.

in any event, he is not subject to backup withholding tax because he is a nonresident alien, who is "not required to file any income tax return." According to plaintiff, in order to recover the amount withheld, the IRS "demanded" that plaintiff file a tax return and Form W-7, titled: "Application for IRS Individual Taxpayer Identification Number." Plaintiff ultimately submitted multiple versions of a Form 1040 tax return for the 2005 tax year on separate dates, all of which stated that the withholdings resulted in an alleged $121,288.00 overpayment of his tax liability, which liability plaintiff stated was zero. Plaintiff stated that he first submitted a Form 1040 for the tax year 2005 in 2009 and that it was "timely filed on April 14, 2009." Plaintiff also referred to this tax return as a "claim for refund." Plaintiff further argued that the IRS wrongfully remains in possession of his funds because the "IRS did not process the 2005 1040 return timely filed on April 14, 2009," and that, instead, the IRS considered "only the untimely" returns that plaintiff had sent to the IRS in later correspondences with the IRS. Plaintiff requested that the court "should direct Defendant to return the $121,288 deposited with the IRS and misappropriated by the Defendant as of December 27, 2005, plus 9% pre and post judgment interest compounded annually as is applicable in New York State on a judgment for conversion, plus costs and attorney fees." Finally, plaintiff asserted in his complaint in this court that he "should also be awarded damages pursuant to IRC 7433 [26 U.S.C. § 7433 (2018)] for the reckless and intentional misconduct of the IRS in confiscating and retaining monies it illegally converted." In response to the complaint, defendant filed its motion to dismiss plaintiff's complaint. Defendant asserted first that plaintiff did not file his suit for refund within the time allowed in 26 U.S.C. § 6532(a) (2018); and second that this court is barred from hearing plaintiff's damages claim under 26 U.S.C. § 7433 for "reckless and intentional misconduct" by the IRS.

In the Opinion issued earlier this year, the court granted defendant's motion to dismiss. See Peretz v. United States, 148 Fed. Cl. at 613. The court found that, pursuant to 26 U.S.C. § 6532, plaintiff's suit in this court for the refund of $121,288.00, plus interest, for the 2005 tax year was not timely filed within two years of the first Notice of Disallowance issued by the IRS on July 29, 2015. See Peretz v. United States, 148 Fed. Cl. at 604–05. The court also found that the United States Court of Federal Claims lacked subject-matter jurisdiction over plaintiff's separate claim that plaintiff should be entitled to damages under 26 U.S.C. § 7433. See Peretz v. United States, 148 Fed. Cl. at 612.

As noted above, plaintiff has filed a motion for this court to reconsider its earlier decision to dismiss plaintiff's complaint. In plaintiff's motion for reconsideration, plaintiff did not state under which Rule of the Rules of the United States Court of Federal Claims (RCFC) Mr. Peretz brought his motion to reconsider. Subsequently, in his reply brief, plaintiff stated that "[p]laintiff's Motion for Reconsideration . . . was timely filed by Plaintiff's attorney's office under RCFC 59(b)(1) and/ or RCFC 60 on June 29, 2020." On the same day that plaintiff filed his motion for reconsideration, plaintiff also filed a motion for leave to amend his complaint. Defendant responded to both motions. The plaintiff replied and the parties submitted sur-replies.

Reconsideration of a judgment is not intended to permit a party to retry its case when it previously was afforded a full and fair opportunity to do so. The United States

Court of Appeals for the Federal Circuit has stated that it "reviews the trial court's decision on reconsideration for an abuse of discretion." Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (citing Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.) (noting that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court"), reh'g denied (Fed. Cir. 1990)); see also Int'l Custom Prods., Inc. v. United States, 791 F.3d 1329, 1339 (Fed. Cir. 2015) (stating that the United States Court of Appeals for the Federal Circuit reviews "the dismissal of a motion to amend and the dismissal of a motion for reconsideration for an abuse of discretion" (citing Renda Marine, Inc. v. United States, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (motion for reconsideration); and Saarstahl AG v. United States, 177 F.3d 1314, 1320 (Fed. Cir. 1999) (motion to amend))); Nat'l Westminster Bank, PLC v. United States, 512 F.3d 1347, 1363 (Fed. Cir. 2008) ("An abuse of discretion occurs when a court misunderstands or misapplies the relevant law or makes a clearly erroneous finding of fact."); PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc., 840 F.2d 1565, 1572 (Fed. Cir. 1988) (discussing "abuse of discretion" standard and stating that "[a]lthough various errors of law, fact, substance and form, singly or in combination, may affect the relief granted at the trial level, if the error did not actually form the basis for the determination appealed, no abuse of discretion will have occurred because the error is harmless"); Carter v. United States, 207 Ct. Cl. 316, 318, 518 F.2d 1199, 1199 (1975), cert. denied, 423 U.S. 1076, reh'g denied, 424 U.S. 950 (1976); CanPro Invs. Ltd. v. United States, 131 Fed. Cl. 528, 531 (2017); Osage Tribe of Indians of Okla. v. United States, 97 Fed. Cl. 345, 348 (2011) (discussing RCFC 59(a) and RCFC 60(b)); Oenga v. United States, 97 Fed. Cl. 80, 83 (2011) (discussing RCFC 59(a)); Webster v. United States, 92 Fed. Cl. 321, 324, recons. denied, 93 Fed. Cl. 676 (2010) (discussing RCFC 60(b)); Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 126, 129 (2009) (discussing RCFC 54(b) and 59(a)); Banks v. United States, 84 Fed. Cl. 288, 291-92 (2008) (discussing RCFC 54(b) and 59(a)); Corrigan v. United States, 70 Fed. Cl. 665, 667-68 (2006) (discussing RCFC 59(a)); Tritek Techs., Inc. v. United States, 63 Fed. Cl. 740, 752 (2005); Keeton Corr., Inc. v. United States, 60 Fed. Cl. 251, 253 (2004) (discussing RCFC 59(a)); Paalan v. United States, 58 Fed. Cl. 99, 105 (2003), aff'd, 120 F. App'x 817 (Fed. Cir.), cert. denied, 546 U.S. 844 (2005); Citizens Fed. Bank, FSB v. United States, 53 Fed. Cl. 793, 794 (2002) (discussing RCFC 59(a)).

"Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)) (discussing RCFC 59(a)), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005); see also Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016); Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002) ("Rule 60(b)(6) is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b)." (citing Marquip, Inc. v. Fosber Am., Inc., 198 F.3d 1363, 1370 (Fed. Cir. 1999), reh'g denied (Fed. Cir. 2000); Provident Sav. Bank v. Popovich, 71 F.3d 696, 700 (7th Cir. 1995))); Oenga v. United States, 97 Fed. Cl. at 83; Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996) (discussing RCFC 59(a)), aff'd, 144 F.3d 769 (Fed. Cir. 1998). Generally, "[t]he cases seem to make [a] fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found or not. In a vast majority of cases finding that extraordinary

3

circumstances do exist so as to justify relief, the movant is completely without fault . . . ." 12 Joseph T. McLaughlin and Thomas D. Rowe, Jr., Moore's Federal Practice § 60.48[3][b] (3rd ed. 2008) (discussing RCFC 60(b)(6)); see also Amado v. Microsoft Corp., 517 F.3d 1353, 1363 (2008) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 393 (1993)) (discussing RCFC 60(b)(6)).

      Courts must address reconsideration motions with "exceptional care." Carter v. United States, 207 Ct. Cl. at 318, 518 F.2d at 1199; see also Global Comput. Enters. v. United States, 88 Fed. Cl. 466, 468 (2009) (discussing RCFC 59(a)). "Under Rule 59(a)(1), a court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" Biery v. United States, 818 F.3d at 711 (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)); see also Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1383 (Fed. Cir. 2010); Griffin v. United States, 96 Fed. Cl. 1, 7 (2010) (discussing RCFC 59(a)), mot. to amend denied, appeal dismissed, 454 F. App'x 899 (Fed. Cir. 2011); Totolo/King Joint Venture v. United States, 89 Fed. Cl. 442, 444 (2009) (quoting Stockton E. Water Dist. v. United States, 76 Fed. Cl. 497, 499 (2007), aff'd in part, vacated in part, rev'd in part on other grounds, 583 F.3d 1344 (Fed. Cir. 2009)) (discussing RCFC 59(a)), appeal dismissed, 431 F. App'x 895 (Fed. Cir.), reh'g denied (Fed. Cir. 2011); Dairyland Power Coop. v. United States, 90 Fed. Cl. 615, 652 (2009) (discussing RCFC 59(a)), recons. denied, No. 04-106C, 2010 WL 637793 (Fed. Cl. Feb. 22, 2010), aff'd in part, vacated in part on other grounds, 645 F.3d 1363 (Fed. Cir. 2011); Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citations omitted) (discussing RCFC 59); Prati v. United States, 82 Fed. Cl. 373, 376 (2008) (discussing RCFC 59(a)), aff'd, 603 F.3d 1301 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2010), cert. denied, 562 U.S. 1139 (2011). "Manifest," as in "manifest injustice," is "understood as clearly apparent or obvious." Cyios Corp. v. United States, 124 Fed. Cl. 107, 113 (2015) (internal quotation marks omitted); see also Lee v. United States, 130 Fed. Cl. 243, 252 (2017), aff'd, 895 F.3d 1363 (Fed. Cir. 2018); Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002) (discussing RCFC 59), aff'd, 384 F.3d 1368 (Fed. Cir. 2004), cert. denied, 544 U.S. 948 (2005). "Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" Griffin v. United States, 96 Fed. Cl. at 7 (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part, rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008)). "A court, therefore, will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the court.'" Ammex, Inc. v. United States, 52 Fed. Cl. at 557 (emphasis in original) (quoting Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993), aff'd, 50 F.3d 1021 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1995)); see also CanPro Invs. Ltd. v. United States, 131 Fed. Cl. at 531; Griffin v. United States, 96 Fed. Cl. at 7; Bowling v. United States, 93 Fed. Cl. 551, 562 (discussing RCFC 59(a) and 60(b)), recons. denied (2010); Webster v. United States, 92 Fed. Cl. at 324 (discussing RCFC 59(a) and 60(b)); Pinckney v. United States, 90 Fed. Cl. 550, 555 (2009); Tritek Techs., Inc. v. United States, 63 Fed. Cl. at 752. "A motion for reconsideration is not intended . . . to give an unhappy litigant an additional chance to

sway the court." Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. 469, 475 (2012) (internal quotations omitted; ellipse in original). "It is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier." Lee v. United States, 130 Fed. Cl. at 252; see also Cyios Corp. v. United States, 124 Fed. Cl. at 113 (rejecting protestor's argument raised for the first time in its motion for reconsideration); CANVS Corp. v. United States, 116 Fed. Cl. 294, 300 (2014) ("[A] party may not raise an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." (internal quotation marks and citation omitted)). In sum, it is well established that "a motion for reconsideration 'should not be based on evidence that was readily available at the time the motion was heard.'" Johnson v. United States, 127 Fed. Cl. 661, 664 (2016) (quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. at 594). "'Post-opinion motions to reconsider are not favored . . . especially where a party has had a fair opportunity to litigate the point in issue.'" Wagstaff v. United States, 118 Fed. Cl. 172, 175 (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (Fed. Cir. 1994)), aff'd, 595 F. App'x 975 (Fed. Cir. 2014).

RCFC 59 states, in relevant part:

**(a) In General.**

> **(1) Grounds for a New Trial or Reconsideration.** The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows:
>
>> **(A)** for any reason for which a new trial has heretofore been granted in an action at law in federal court;
>>
>> **(B)** for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or
>>
>> **(C)** upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

**(b) Time to File a Motion for a New Trial or for Reconsideration.**

> **(1)** A motion for a new trial or for reconsideration under RCFC 59(a)(1)(A) or (B) must be filed no later than 28 days after the entry of judgment.
>
> **(2)** A motion for a new trial or for reconsideration under RCFC 59(a)(1)(C) may be filed--and the payment of judgment stayed--at any time while the suit is pending, after review

>     proceedings have been initiated, or within 2 years after the
>     final disposition of the suit.

Id. (emphasis in original).

As noted above, in plaintiff's reply, plaintiff states that his motion for reconsideration "was timely filed by Plaintiff's attorney's office under RCFC 59(b)(1) and/or RCFC 60 on June 29, 2020." To the extent that plaintiff relies on RCFC 59, plaintiff's motion for reconsideration is untimely as it was filed more than 28 days after judgment was entered in the above-captioned case on June 1, 2020. See RCFC 59(b)(1) ("A motion for a new trial or for reconsideration under RCFC 59(a)(1)(A) or (B) must be filed no later than 28 days after the entry of judgment."); see also RCFC 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."); RCFC 6(b)(2) (stating that "[t]he court must not extend the time to act under" RCFC 59(b)). In plaintiff's case, the decision granting defendant's motion to dismiss was issued on May 31, 2020, and judgment was entered on June 1, 2020. According to the Court Management/Electronic Case Files, "CM/ECF," docket entry in the above-captioned case, plaintiff's motion for reconsideration was filed on June 30, 2020, which is beyond the 28-day deadline in RCFC 59(b)(1) according to which a plaintiff is allowed to file a motion for reconsideration.

Moreover, plaintiff's motion for reconsideration did not address the untimeliness issue with regard to the date of filing of plaintiff's motion for reconsideration until after defendant identified the issue in defendant's response to plaintiff's motion for reconsideration. Subsequently, in plaintiff's reply brief, plaintiff alleged that he "timely filed" his motion for reconsideration on June 29, 2020, but that it "was not accepted by the Court because the clerk had already closed the case." Plaintiff also alleged that he contacted the Clerk's Office on June 29, 2020 for assistance, but "[a]s a result of Coved [sic] 19, the Court was effectively closed and was unable to facilitate the docketing beyond directing Plaintiff to look at Rule 58-60 for post-judgment options."[2] Plaintiff's counsel of record attached what he described as "contemporaneous e-mails" to plaintiff's reply brief, which he asserted "confirm communications by Plaintiff's attorney's office with the Court's clerk's office and Pacer."[3] The email chain attached, however, consists of a cut-off image, with email text running off the page, of email correspondence between the addresses "sarah.pts@verizon.net" and "psol@verizon.net."

According to the defendant, the "psol@verizon.net" email address appears to belong to former attorney Israel Grossman, the brother of Raphael Grossman, an

---

[2] The court was not closed on Monday, June 29, 2020, and was fully operational on that day, although many court personnel were working remotely.

[3] "Pacer" is the mechanism for the public to view filings in the court's electronic system. New filings must be submitted through "CM/ECF," the court's electronic filing system, which is how the plaintiff's counsel of record submitted his previous filings, including the motions for reconsideration and to amend plaintiff's complaint.

6

accountant retained by plaintiff during the pendency of plaintiff's tax issues with the IRS at issue in this case. As stated by the defendant in its sur-reply to plaintiff's motion for reconsideration:

> It appears that the psol@verizon.net address is that of Pension Strategies Corp., whose president is Israel Gedaliah Grossman, Raphael Grossman's brother. (See www.pensionstrategies.net/#/about (last visited on September 8, 2020).) Lawrence Kulak, plaintiff's attorney of record in this case, uses the same office address as that of Pension Strategies Corp.— 1430 Broadway, Suite 1509, New York, New York 10018. (See id.)
>
> As noted on the company's website (see id.), Israel Grossman was formerly an IRS Estate and Gift Tax Attorney. . . . Israel Grossman was disbarred in 2008 and, earlier, was criminally convicted of securities fraud and mail fraud. See In re Israel G. Grossman, 853 N.Y.S.2d 333 (N.Y. App. Div. 2008) (per curiam), appeal dismissed, 892 N.E.2d 855 (N.Y.2008).

The email exhibit attached by plaintiff's counsel to plaintiff's motion for reconsideration indicates that, on June 28, 2020, "psol@verizon.net" sent an email to "sarah.pts@verizon.net" with the subject line, "Peretz," with the instruction to "[p]lease file ASAP motion for reconsideration and motion for leave to amend." The email address, "sarah.pts@verizon.net" allegedly responded the following day that "[t]he Court will not take this filing as is. Advised to look at Rules 58-60 for post judgment." The Clerk's Office of United States Court of Federal Claims has confirmed that there is no "Sarah" working in the court's Clerk's Office, nor is "@verizon.net" an email domain utilized by the United States Court of Federal Claims. Notwithstanding plaintiff's unsubstantiated allegations, plaintiff's motion was not timely filed as a motion for reconsideration under RCFC 59.

As noted above, in plaintiff's reply brief, plaintiff indicated the reconsideration was filed pursuant to "RCFC 59(b)(1) and/ or RCFC 60 . . . ." Although plaintiff's motion to reconsider is untimely under RCFC 59, if considered under RCFC 60, the analysis is different. RCFC 60 states, in relevant part:

> **(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.** The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
>
> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

7

> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
>
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> **(4)** the judgment is void;
>
> **(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> **(6)** any other reason that justifies relief.

Id. (emphasis in original). "A motion under RCFC 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." RCFC 60(c). Provisions (4) and (5) of RCFC 60(b) are not relevant to plaintiff's case.

Neither plaintiff's motion for reconsideration nor plaintiff's reply briefs state under which provision of RCFC 60 plaintiff is trying to bring his motion. As in past filings, plaintiff's motion for reconsideration utilizes confusing language, with run-on sentences, conflations of facts and legal arguments, as well as includes unsubstantiated accusations of misconduct by the IRS and defendant's counsel. In addition, plaintiff's motion for reconsideration reiterates many of the same arguments as argued by plaintiff in plaintiff's opposition to defendant's motion to dismiss, which were determined to be without merit in the court's May 31, 2020 Opinion dismissing plaintiff's complaint. For example, plaintiff asserts in his motion for reconsideration:

> The Court was misled by Defendant's argument that the March 29, 2015 Notice of Disallowance caused the Court to lose jurisdiction over Plaintiff's timely signed and filed April 14, 2009 claim because the exact same amount of refund, $121,286 [sic; $121,288.00] is requested in the only claim Plaintiff authorized to be timely filed, as in the unsigned, untimely claim Defendant subsequently caused to be filed, despite Defendant's lack of jurisdiction to determine the subsequent unsigned claim Plaintiff did not cause to be filed. The absurd argument fails to recognize that the July 29, 2015 Notice of Disallowance was not a disallowance of the merits of Plaintiffs [sic] claim that equally applies to the merits of Plaintiff's timely filed claim. It was no more than an unrelated procedural determination that the Court lacks jurisdiction to consider a subsequent unauthorized claim that had to be procedurally dismissed for lack of jurisdiction.

To the extent that plaintiff now is attempting to re-assert that plaintiff had, in fact, submitted a Form 1040 for the 2005 tax year requesting a refund of $121,288.00 on April 14, 2009, when the court considered defendant's motion to dismiss, the court assumed that to be true for the purposes of ruling on defendant's motion. Indeed, the court stated in its earlier decision granting defendant's motion to dismiss that, "based on the record before the court, plaintiff first filed a claim for refund when he filed his 2005 Form 1040 tax return, as accepted for the purposes of this lawsuit, on April 14, 2009." Peretz v. United States, 148 Fed. Cl. at 611. In the court's May 31, 2020 Opinion, the court also explained:

> [T]he record before the court on the current motion to dismiss supports that the IRS received a version of plaintiff's 2005 Form 1040 on April 14, 2009. In an October 1, 2009 letter to plaintiff, the IRS referred to a submission of plaintiff's 2005 Form 1040 tax return which plaintiff "submitted with your ITIN application." Plaintiff's Form W-7 ITIN application was initially submitted on April 14, 2009, as indicated by the IRS date-stamp on the Form W-7. Second, a letter from the IRS to plaintiff, dated December 23, 2009, states that the IRS contemplated assessing a $5,000.00 penalty because the IRS had "determined that the information you filed as a return of tax, or purported return of tax, on Apr. 14, 2009, is frivolous and there is no basis in the law for your position."

Peretz v. United States, 148 Fed. Cl. at 604 n.15. Assuming, for the purposes of considering defendant's motion to dismiss, that plaintiff had submitted a timely Form 1040 for the 2005 tax year on April 14, 2009, the court found that the IRS' July 29, 2015 Notice of Disallowance, sent by certified mail, operated to trigger the two-year period in which plaintiff could file suit for the refund of plaintiff's 2005 withheld funds, pursuant to 26 U.S.C. § 6532(a)(1).[4] See Peretz v. United States, 148 Fed. Cl. at 604–05. The court noted that the July 29, 2015 Notice of Disallowance referenced plaintiff's December 31, 2005 tax period, but instead of referencing plaintiff's alleged April 14, 2009 refund request, the July 29, 2015 Notice of Disallowance referenced a "claim(s) received" on March 9, 2015, and denied plaintiff's claim for refund as untimely because he filed his "claim for

---

[4] The statute states, in full:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1).

credit or refund more than 3 years after the tax return due date." See id. at 604 n.16. The March 9, 2015 "claim(s) received" appears to correspond with an additional copy of plaintiff's 2005 tax return sent by one of plaintiff's representatives, Mr. Abraham Dan, to the IRS on March 4, 2015, which was received by the IRS on March 9, 2015. See id. at 604. According to the court's May 31, 2020 Opinion, "[p]laintiff's case in this court appears identical to the claim which was disallowed by the IRS in its July 29, 2015 Notice of Disallowance" for $121,288.00 for the 2005 tax year. See id. at 605. The court, therefore, found that plaintiff's case "should be governed by 26 U.S.C. § 6532(a)(1)," despite that the IRS did not reference plaintiff's initial April 14, 2009 refund request in the July 29, 2015 Notice of Disallowance. See Peretz v. United States, 148 Fed. Cl. at 605.

Subsequent to the July 29, 2015 Notice of Disallowance by the IRS, the IRS unexpectedly issued another Notice of Disallowance on December 2, 2019, apparently in response to another claim by plaintiff for the refund of $121,288.00 for the 2005 tax year, received by the IRS on September 30, 2019. See id. at 606. The court found that the second Notice of Disallowance issued by the IRS on December 2, 2019 did not start a new time in which to file, see 26 U.S.C. § 6532(a)(4),[5] and that plaintiff was unable to rely on equitable considerations to extend, or start anew, the two-year time limitation set forth in 26 U.S.C. § 6532(a)(1). See Peretz v. United States, 146 Fed. Cl. at 605, 609–11 (discussing United States v. Brockamp, 519 U.S. 347 (1997); Marcinkowsky v. United States, 206 F.3d 141 (Fed. Cir. 2000); and RHI Holdings, Inc. v. United States, 142 F.3d 1459 (Fed. Cir. 1998)). The court finds no error in its findings with regard to the application of 26 U.S.C. § 6532(a) to plaintiff's refund suit in this court, or in the court's finding that RCFC 60 does not afford the plaintiff any relief as requested.

In plaintiff's motion for reconsideration, plaintiff also appears to take issue with the court's decision to end a stay imposed in this case after the second Notice of Disallowance was issued by the IRS and plaintiff's additional appeal. As stated in this court's May 31, 2020 Opinion granting defendant's motion to dismiss, "on December 2, 2019, after the commencement of the case in this court, and after the parties had completed briefing defendant's motion to dismiss," but prior to the issuance of the court's Opinion, "the IRS issued an unexpected, second Notice of Disallowance related to plaintiff's request for refund for the 2005 tax year." Peretz v. United States, 148 Fed. Cl. at 606. Based on the record before the court, the December 2, 2019 Notice of Disallowance appeared to have been issued in response to multiple, continuing requests by plaintiff's counsel of record contacting the IRS for information and demands for refund by plaintiff. See id. at 595. When the parties notified the court of the IRS' December 2, 2019 Notice of Disallowance and the plaintiff's subsequent appeal of the December 2, 2019 Notice of Disallowance to the IRS Appeals Office on December 24, 2019, the court

---

[5] 26 U.S.C. § 6532(a)(4) provides that "[a]ny consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." Id.

10

ordered a stay of the case to allow for the plaintiff and the IRS to sort out what had occurred. Ultimately, defendant represented to the court, in a motion for the court to reconsider its stay, that the position of the IRS and the Department of Justice was that the IRS Appeals Office would not take action on plaintiff's 2019 administrative appeal due to the IRS lacking "authority to compromise plaintiff's case, rendering any such stay futile." (citing 26 U.S.C. § 7122(a) (2018)). Defendant also filed subsequent status reports with the court informing the court that the IRS Appeals Office, indeed, had not taken any action with regard to plaintiff's December 24, 2019 IRS appeal. This court then issued its decision which granted defendant's motion to dismiss and ordered entry of final judgment in the case, which the Clerk's Office entered on June 1, 2020, thus, rendering the court's stay moot. As noted above, the court also determined that the December 2, 2019 Notice of Disallowance did not trigger a new two-year time period in which plaintiff could file suit with regard to plaintiff's tax refund claim. See generally Peretz v. United States, 148 Fed. Cl. at 606–11.

In plaintiff's motion for reconsideration, plaintiff's counsel of record, nonetheless, urges the court to "reconsider the reversal of its prior Order" staying the case. Plaintiff appears to try to use the court's stay Order in order for the IRS to consider plaintiff's December 24, 2019 IRS appeal as the court's "prior Order," or "initial decision." As stated by the United States Court of Appeals for the Federal Circuit, however, "[w]hen and how to stay proceedings is within the sound discretion of the trial court." Cherokee Nation of Okla. v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citing Landis v. North Am. Co., 299 U.S. 248, 254–55 (1936); and Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983)). The Federal Circuit in Cherokee Nation stated further that in "deciding to stay proceedings indefinitely, a trial court must first identify a pressing need for the stay. The court must then balance interests favoring a stay against interests frustrated by the action. Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." Cherokee Nation of Okla. v. United States, 124 F.3d at 1416. Given the IRS' decision not to act on plaintiff's most recent administrative appeal, the court proceeded to issue its Opinion dismissing plaintiff's case. The court finds no error in the ending of the stay when final judgment was entered in this case. The court also notes that the court would have no basis or authority to consider a stay once the case was closed.[6]

---

[6] Plaintiff also asserts that "[t]his Court's initial decision was consistent with the recent decision by the United States Court of Appeals for the Federal Circuit in Walby v. United States, 957 F.3d 1295 (Fed. Cir. 2020)." To the extent plaintiff tries to rely on Walby to assert that this court should have maintained the stay for an indefinite period of time, plaintiff's reliance is misplaced. As this court recognized in its decision granting defendant's motion to dismiss, in the appropriate case, the Walby case may be relevant to the extent that dismissal under 26 U.S.C. § 6532 could be viewed as a dismissal for failure to state a claim, rather than for lack of subject-matter jurisdiction. See Peretz v. United States, 148 Fed. Cl. at 602–04, 613. The law governing a stay was not at issue in Walby, nor was a stay even mentioned in the Federal Circuit's decision.

Plaintiff also suggests in its motion for reconsideration a possible issue regarding the holding in Rosenman v. United States, 323 U.S. 658 (1945), as applied in the United States Court of Appeals for the Federal Circuit's subsequent holding in Strategic Housing Finance Corp. of Travis County v. United States, 608 F.3d 1317 (Fed. Cir. 2010), relating to the determination of remittances to the IRS as deposits, rather than tax payments. In its response, the defendant notes a possible "tension" between this court's earlier decision in the above-captioned case and the Federal Circuit's holding in Strategic Housing. Defendant notes:

> The Court's Opinion of May 31, 2020, might arguably be read as holding that § 6532(a) would apply even if a plaintiff sought to recover funds that were properly considered to be deposits, rather than payments. Such a reading would seemingly be in tension with the Federal Circuit's opinion in Strategic Housing Finance Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1329–30 (Fed. Cir. 2010).

(internal reference omitted). In Strategic Housing, the Federal Circuit found that taxpayer remittances deemed to be deposits are not subject to the "procedural prerequisites to filing a suit in the CFC [United States Court of Federal Claims]," such as the two-year limitation to file suit found in 26 U.S.C. § 6532(a), the provision at the center of the issue in the above-captioned case. See Strategic Housing Finance Corp. of Travis Cnty. v. United States, 608 F.3d at 1328 (citing Rosenman v. United States, 323 U.S. at 662–63). The Strategic Housing court also noted that "[t]his court has indeed held that § 7422(a) does not apply to a deposit for a tax because a deposit is not a suit for 'recovery of any internal revenue tax.'" Id. (quoting New York Life Ins. Co. v. United States, 118 F.3d 1553, 1558 (Fed. Cir. 1997). In the court's May 31, 2020 Opinion granting defendant's motion to dismiss, the court did not consider that plaintiff's withheld monies could qualify as deposits rather than tax payments. The undersigned concluded in its earlier decision that the monies which plaintiff sought to recover were for backup withholdings on taxes due, and, therefore, the recovery of such withholdings were properly subject to the two-year limitation in which to file suit in this court, as set forth in 26 U.S.C. § 6532(a)(1). As was described in the Findings of Fact portion of the court's May 31, 2020 Opinion based on plaintiff's complaint, plaintiff consistently alleged that as a foreigner, non-resident alien, he should not be subject to having to pay any taxes, including on the monies he was filing to have refunded. It is inconsistent, therefore, for plaintiff to have claimed that he had "deposited" the monies, and was seeking a refund of a deposit, when he contended he would never owe United States taxes at any time.

In the past, the United States Court of Appeals for the Federal Circuit applied a "circumstances" test to determine whether monies remitted to the IRS should be considered deposits rather than payments. See Lua v. United States, 843 F.3d 950, 956 (Fed. Cir. 2016) ("Prior to the adoption of the statutory definition of 'deposit' in 2004, courts used a test of 'circumstances' to determine whether remittances were deposits or payments." (footnote omitted) (citing New York Life Insurance Co. v. United States, 118 F.3d 1553, 1559–60 (Fed. Cir. 1997) (adopting the circumstances test))); see also VanCanagan v. United States, 231 F.3d 1349, 1353–54 (Fed. Cir. 2000) (applying the

12

circumstances test to a remittance accompanying an extension application, and finding that there was no indication that, at the time of the remittance, the taxpayers or the government viewed the remittance as a deposit, rather than a payment, or that the taxpayers were "preserving their right to contest their alleged tax liability"); Strategic Housing Finance Corp. of Travis Cnty. v. United States, 608 F.3d at 1329 (stating that "[a]ccording to the Supreme Court, deposits are placed into a separate account like 'payments in escrow. They are set aside . . . in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer,'" and that "[a] taxpayer makes a deposit on a future tax to 'stop[ ] the running of penalties and interest.'" (last alteration in original; ellipses in original) (quoting Rosenman v. United States, 323 U.S. at 662)). In Lua, however, the Federal Circuit recognized that the "circumstances" test was superseded by the enactment of 26 U.S.C. § 6603 as part of the American Jobs Creation Act of 2004, Pub. L. No. 108–357, § 842, 118 Stat. 1418, 1498–1600. See Lua v. United States 843 F.3d at 956 ("Because the funds were received after 2004, the New York Life circumstances test does not apply and I.R.C. § 6603 controls."). As explained by the Federal Circuit in Lua, the statute at 26 U.S.C. § 6603, titled: "Deposits made to suspend running of interest on potential underpayments, etc."

> provides that a "taxpayer may make a cash deposit with the [IRS] which may be used by the [IRS] to pay any tax . . . which has not been assessed at the time of deposit. Such a deposit shall be made in such a manner as the [IRS] shall prescribe." The IRS's Revenue Procedure explains that a deposit shall be accompanied with a "written statement" designating the deposit as such, and that any undesignated remittance "will be treated as a payment and applied by the [IRS] against any outstanding liability for taxes, penalties[,] or interest." Rev. Proc. 2005-18, 2005-13 I.R.B. 798 § 4.01(1)–(2) (2005).

Lua v. United States, 843 F.3d at 956 (alterations and ellipses in original).

The monies in question withheld from plaintiff's Citicorp brokerage account consisted of $119,815.40, withheld as backup withholding tax on December 27, 2005 after plaintiff's sale of his shares of Intel Corporation and Microsoft Corporation, and $1,472.17, withheld as backup withholding tax during 2005 as a result of plaintiff's receipt of stock dividends. The record before the court in the above-captioned case contains no indication that, at any point between 2005 and 2009, did plaintiff provide the IRS with a written statement identifying that the withholdings of his monies from his trading activities were to be treated as deposits, that the taxes due had not been legally withheld, or that the withholdings were in dispute. The first time that plaintiff sought to recover the monies withheld was no earlier than April 14, 2009 when he began his sequential submissions of paperwork to receive an Individual Taxpayer Identification Number and a refund of $121,288.00 for the 2005 tax year. Under the IRS procedures set forth in 26 U.S.C. § 6603, as acknowledged by the United States Court of Appeals for the Federal Circuit in Lua, plaintiff's claim should not be considered a deposit because plaintiff has not offered any evidence to establish that the monies at issue were to be considered deposits. In fact, plaintiff asserted in this court that he could not be subject to such taxes as a foreigner,

non-resident alien. Therefore, the monies at issue do not constitute deposits and are properly subject to the two-year limitation in which to file suit pursuant to 26 U.S.C. § 6532. See generally Peretz v. United States, 148 Fed. Cl. at 604–05.

Finally, as noted above, plaintiff's motion for reconsideration is also peppered with accusations of misconduct on the part of the IRS and defendant's counsel of record in the above-captioned case, none of which this court finds to have any merit based on plaintiff's filings. Plaintiff has continued to allege throughout this case that defendant's actions constituted misconduct with regard to defendant's "refusal to produce a version of Plaintiff's 2005 Form 1040 which is identical to the signed and timely filed claim annexed to Plaintiff's complaint." Plaintiff also asserts that "[n]or would Defendant disclose its letter dated December 22 [sic; 23], 2009 confirming the existence of Plaintiff's signed claim that was timely filed." Plaintiff also alleges misconduct related to the IRS Appeals Office's decision not to act on plaintiff's most recent December 24, 2019 appeal after the IRS issued plaintiff the second Notice of Disallowance issued on December 2, 2019.

In defendant's response to plaintiff's motion for reconsideration, defendant categorically denies all of plaintiff's accusations of misconduct. With regard to defendant's inability to produce an identical Form 1040 for the 2005 tax year as the one attached to plaintiff's complaint, defendant has maintained that the IRS was unable to identify that such an identical document ever was submitted to the IRS. Although it appears that plaintiff submitted some version of his Form 1040 for the 2005 tax year on April 14, 2009, the record before the court is consistent with defendant's position that no such version identical to the Form 1040 attached to plaintiff's complaint was ever submitted to the IRS. See Peretz v. United States, 148 Fed. Cl. at 604 n.15. Furthermore, with regard to the December 23, 2009 document, defendant indicates:

> We note that the [December 23, 2009] letter refers to a proposed frivolous tax return penalty. As defendant understands the matter, the IRS's initial search for administrative files for this case did not extend to files associated with the separate civil penalty account for plaintiff's 2005 tax year (since no such penalties were mentioned in the complaint). Defendant understands, however, that after plaintiff filed the December 23, 2009, letter in this case, the IRS searched for such files, but that search was not successful because the administrative file for the civil penalty account had been purged.

Plaintiff has not provided evidence to establish that the IRS' purging of the December 23, 2009 document was anything other than the IRS' purging in the normal course of business and in any event does not rise to the level of fraud under RCFC 60(b)(3) given plaintiff's filing. Moreover, plaintiff was not adversely affected by the defendant's purging of the December 23, 2009 document because a copy of the December 23, 2009 document was produced by plaintiff in the course of proceedings in this case. As discussed above, the court accepted that the December 23, 2009 document provided support to plaintiff's position that he had timely submitted a Form 1040 for the 2005 tax year on April 14, 2009. See Peretz v. United States, 148 Fed. Cl. at 604 n.15. Defendant's inability to produce certain documents in this case is not itself sufficient to establish that there was

14

misconduct. Moreover, plaintiff has not presented evidence which would establish that defendant's counsel of record had acted improperly, including with regard to plaintiff's most recent IRS appeal. Unfortunately, the IRS added confusion to the case by issuing the second, December 2, 2019 Notice of Disallowance. Plaintiff's claim for refund for the 2005 tax year, however, had been denied by the first Notice of Disallowance issued by the IRS on July 29, 2015 for the exact amount claimed again in plaintiff's claim for refund resubmitted on September 30, 2019. The second, December 2, 2019 Notice of Disallowance did not change the applicable statute of limitations or the result of dismissing plaintiff's case.

In sum, after considering plaintiff's motion to reconsider, the court finds no basis that establishes that "'there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" See Biery v. United States, 818 F.3d at 711 (quoting Young v. United States, 94 Fed. Cl. at 674). Plaintiff has not established that the court committed harmful error in its earlier, May 31, 2020 decision granting defendant's motion to dismiss or that the judgment should be altered. Moreover, given the denial of plaintiff's motion to reconsider, amending plaintiff's complaint would be futile, as plaintiff's case has been properly dismissed and judgment has been entered. Plaintiff's motion for reconsideration under RCFC 59 or RCFC 60, and plaintiff's motion for leave to amend plaintiff's previously dismissed complaint are, therefore, **DENIED**.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**